740 So.2d 1262 (1999)
Judy WALLS, James E. Walls, Kathy W. Hoffpauir, Brenda W. Hebert and Michael Walls
v.
AMERICAN OPTICAL CORPORATION, et al.
No. 98-CC-0455.
Supreme Court of Louisiana.
September 8, 1999.
*1263 Joseph Michael Bruno, David S. Scalia, Paul David Dugas, Bruno & Bruno, New Orleans, Counsel for Applicant.
Michael Thomas Cali, John J. Hainkel, III, Greg Anthony Pellegrini, Frilot, Partridge, Kohnke & Clements, New Orleans, Jerald L. Album, Album, Stovall, Radecker & Giordano, Metairie, Patrick J. Hanna, Rabalais, Hanna & Hays, Lafayette, Ellen G. Reynard, Kent M. Adams, Adams, Coffey & Duesler, TX, Gerald Melchiode, Galloway, Johnson, Thompson & Burke, New Orleans, Andrew David Weinstock, Duplass, Wittman, Zwain & Williams, Metairie, Howard Louis Murphy, Deutsch, Kerrigan & Stiles, New Orleans, Jerome M. Volk, Jr., Michelle Louise Maraist, DeMartini, LeBlanc, D'Aquila & Volk, Kenner, St. Paul Bourgeois, IV, Allen & Gooch, Lafayette, Richard P. Sulzer, Esperanza Diaz Briscoe, Blue Williams, Metairie, Charles J. Hanemann, Jr., Henderson, Hanemann & Morris, Houma, Paul Leonard Veazey, Jr., Stockwell, Sievert, Viccellio, Lake Charles, William Francis Bologna, Habans, Bologna & Carrier, New Orleans, Samuel Milton Rosamond, III, Metairie, Scott Parker Yount, Deerfield Beach, FL, Christovich & Kearney, James Michael Garner, Martha Young Curtis, Keith Alex Kornman, William Wells Hall, McGlinchey Stafford, New Orleans, Counsel for Respondent.
Robert H. Urann, Nancy Picard, Metairie, Counsel for amicus curiae Marie Callaway, State Building and Construction.
Donni Elizabeth Young, New Orleans, Counsel for amicus curiae Ness, Motley, Loadholt et al.
Michael Thomas Cali, John J. Hainkel, III, New Orleans, Greg Anthony Pellegrini, Covington, Sidney Andrew Backstrom, Pascagoula, Counsel for amicus curiae Owens Corning.
Samuel Milton Rosamond, III, Metairie, Robert Edgar Caraway, III, New Orleans, Counsel for amici curiae Pete Territo, Steven Kennedy, J.D. Roberts, Commercial Union Ins. Co., American Motorists Industry, Highlands Ins. Co., Travelers Ins. Co.
*1264 Janet Leslie MacDonell, Kym Krystyna Keller, New Orleans, Counsel for amicus curiae GAP Corp.
Sherman Gene Fendler, Mary Susan Johnson, Scott C. Seiler, Jill Thompson Losch, New Orleans, Counsel for amicus curiae Todd Shipyards, Corp.
James W. Hailey, Jr., Dominic J. Ovella, Michael Philip Mentz, John Tilghman Culotta, Valerie T. Schexnayder, Metairie, Counsel for amicus curiae Flintkote Co.
Brian Carl Bossier, Mickal Pokorny Adler, Metairie, Counsel for amicus curiae Avondale Industries Inc.
Glenn Lyle Maximilian, Troy Nathan Bell, New Orleans, Counsel for amicus curiae Garlock Inc.
Mickey P. Landry, Baton Rouge, Frank Joseph Swarr, New Orleans, Counsel for amici curiae Others Similarly Situated.
KIMBALL, J.[*]
We granted certiorari to determine whether La. R.S. 23:1032 as amended in 1976, which extends tort immunity to executive officers, bars a wrongful death action against the executive officers and their liability insurer when the decedent's occupational exposures occurred entirely before the statute was amended, but his death from silicosis did not occur until years after the amendment's effective date. We hold that the amendment to La. R.S. 23:1032 operates prospectively, applying to causes of action arising after its October 1, 1976, effective date. Since plaintiffs' cause of action for negligent wrongful death arose after this effective date, defendant's exception of no cause of action and motion for partial summary judgment should have been sustained. The judgment of the court of appeal is affirmed.

I.
Mr. George Walls was employed as a sandblaster for Land & Marine and Coastal from 1964 to 1970, where he was exposed to silica dust that is created during sandblasting. Mrs. Walls and her children assert that this occupational exposure to silica dust caused Mr. Walls to contract the occupational lung disease silicosis and die from that disease on March 17, 1995. The plaintiffs, Mr. Walls' survivors, filed this survival and wrongful death suit against the executive officers of Land & Marine and Coastal, their insurers, and certain manufacturers and sellers of safety equipment who are not before us in this appeal. Century Indemnity ("Century"), one of the defendant insurers of the executive officers, filed an exception of no cause of action and an alternative motion for partial summary judgment asserting that the plaintiffs' exclusive remedy for their wrongful death claim is in workers' compensation because La. R.S. 23:1032, as amended, extends the employer's tort immunity to executive officers.
The trial court overruled Century's exception of no cause of action on the plaintiffs' wrongful death claim.[1] Century took writs to the fifth circuit which were denied. Century then applied to this Court and we granted the writ and remanded the case to the fifth circuit for briefing and full opinion. Walls v. American Optical Corp., 97-0178 (La.3/21/97), 691 So.2d 70. On remand, the fifth circuit ruled in Century's favor, reversing the trial court judgment. *1265 Walls v. American Optical Corp., 96-1000 (La.App. 5 Cir. 11/25/97), 703 So.2d 800.
Guided by this Court's decisions Guidry v. Theriot, 377 So.2d 319 (La.1979), Taylor v. Giddens, 618 So.2d 834, 840 (La.1993), Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741, and Cole v. Celotex, 599 So.2d 1058 (La.1992), the court below concluded that the wrongful death claim of the relatives of Mr. Walls did not arise until March 17, 1995, the date he died, long after the October 1, 1976 effective date of the amendment to La. R.S. 23:1032. Walls v. American Optical Corp., 703 So.2d at 803. The court held that the plaintiffs' action was barred by the exclusivity provision in that statute at the time it was filed. Id. Hence, the court found error in the trial court's denial of Century's exception of no cause of action, remanded and instructed the trial court to enter judgment in favor of Century, granting the exception of no cause of action regarding the claim of wrongful death. Id. We granted plaintiffs' writ and now review the court of appeal judgment.

II.
Prior to the 1976 amendment to the Louisiana Workers' Compensation Act, La. R.S. 23:1032 provided that workers' compensation benefits were the exclusive remedy of an employee, his personal representatives, dependents or relations, against an employer for injuries arising out of and in the course of his employment. Since the law did not expressly confer immunity from tort suits on any person other than the employer, this Court held in Canter v. Koehring Co., 283 So.2d 716 (La.1973), that an injured worker was allowed to seek recovery in tort from negligent executive officers and their liability insurers. Additionally, if the injured worker died from occupational injuries, his survivors could maintain both a survival action for the decedent's damages as well as a wrongful death action for their own damages against executive officers. However, with Act No. 147, the 1976 legislature amended La. R.S. 23:1032 to extend the employer's tort immunity to persons previously considered third parties under the Act.[2] In Bazley v. Tortorich, 397 So.2d 475 (La.1981), we discussed the change in the law in great detail.
Formerly, the workers' compensation statute provided that compensation was an employee's exclusive remedy against his employer for a compensable injury, leaving him free to pursue other remedies against third persons. The amendment modified the exclusive remedy rule in two respects. First, it provided that for an unintentional injury compensation shall be the exclusive remedy, not only against the employer, but also against any principal, officer, director, stockholder, partner or employee of the employer or principal who was engaged at the time of the injury in the normal course and scope of his employment. Second, it provided that for an intentional act resulting in compensable injury the employee may exercise his right under the compensation act and pursue any other remedy available against the employer and other persons under general law.
Bazley, 397 So.2d at 479.
In Bazley, we also investigated the legislative history of Act 147 and found that the *1266 legislature intended to grant immunity to other defendants, such as the executive officer, ultimately to protect employers who were, practically speaking, paying the costs of litigation, directly or indirectly, through insurance premiums for those executive officers and employees being cast in judgment for workplace injuries. Thus, the purpose of the employer's statutory immunity in tort was being circumvented through executive officer and co-employee suits.
The principal legislative aim of the 1976 amendment was to broaden the class of defendants to be granted immunity from suits by injured employees in tort or delict. Although the legislative history is meager, accounts indicate that the amendment was enacted to provide employers relief from the cost of furnishing liability insurance to executive officers and other employees. Before the amendment, the absence of a prohibition against tort suits against co-employees allowed injured workers to seek tort recovery from negligent executive officers and their liability insurers. This avenue of recovery provoked considerable critical comment. It was argued that, since the employer's enterprise would in the end pay for the tort remedy, either directly or through insurance premiums for officers and employees, the result would be a denial to the employer of much of the practical advantage of the exclusive remedy provision. It was apparently for this reason that the legislature acted to close this avenue of recovery by adopting Act 147 of 1976.
Id. at 479 (internal citations omitted).

III.
The plaintiffs assert that even though the 1976 legislature intended to extend the employer's tort immunity to executive officers, the provision can only permissibly immunize executive officers for their conduct occurring after October 1, 1976. The plaintiffs argue that to apply the exemption to negligent acts committed prior to the laws' effective date is impermissible retroactive application of the law. Mrs. Walls and her children contend that the result would be to immunize the defendants for acts done prior to the amendment granting them immunity.
Determining whether a statute operates retroactively can be difficult when the statute must be applied to a case in which some operative facts pre-date the law while others occurred after the law's effective date. It is imperative to understand that a law may permissibly change the future consequences of an act and even the consequences of acts committed prior to the law's enactment without operating retroactively. 1 M. Planiol, Treatise on the Civil Law, Sec. 243 (La.St.L.Inst. Trans.1959). The United States Supreme Court articulated the same fine-line distinction:
A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law. Rather the court must ask whether the new provision attaches new legal consequences to events completed before its enactment.
Landgraf v. USI Film Products, 511 U.S. 244, 269, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229, 254 (1994)(internal citations omitted).
Many different `formulas' have been offered by the courts for determining whether a statute is operating retroactively. Landgraf, 511 U.S. at 269, 114 S.Ct. at 1499, 128 L.Ed.2d at 254. According to the Supreme Court, "application of new statutes passed after the events in suit is unquestionably proper in many situations. When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." Landgraf, 511 U.S. at 273, 114 S.Ct. at 1501, 128 L.Ed.2d at 257. However, the difficulty of distinguishing retroactive from prospective operation of a statute "is not always a simple or mechanical task." Landgraf, 511 U.S. at 268, 114 S.Ct. at 1498, 128 L.Ed.2d at 254. In the *1267 instant case, the task is complicated by the decades separating the alleged negligent acts and the adjudication of the claim, and amplified by the allegation that all liability producing conduct was complete six years prior to the effective date of the amendment. The natural inclination is to view the amendment's application to acts allegedly complete prior to the amendment's enactment as retroactive because it would seem that the new law is being applied backward in time.
Planiol offers a rule of clarity upon which we rely for guidance in determining whether the amendment, when applied to the instant case, operates retroactively. In his treatise, Planiol sets out the formula for identifying the only two situations in which a law operates retroactively:
[A] law is retroactive when it goes back to the past either to evaluate the conditions of the legality of an act, or to modify or suppress the effects of a right already acquired. Outside of those conditions, there is no retroactivity.
1 M. Planiol, Treatise on the Civil Law, § 243 (La.St.L.Inst.Trans.1959) (emphasis added); See also Palomeque v. Prudhomme, 95-0725, p. 9 (La.11/27/95), 664 So.2d 88, 94, n. 9.
Employing Planiol's formula to determine whether retroactive application is at issue in the instant case, we must ask whether La. R.S. 23:1032, as amended, either (1) evaluates the conditions of the legality of a past act, or (2) modifies or suppresses the effects of a right already acquired. If application of the statute produces neither of these two consequences, then it operates prospectively only, and will apply to bar a cause of action arising after its effective date.
We turn first to the question of whether La. R.S. 23:1032 as amended, would "evaluate the conditions of the legality of a past act." As we noted in Bazley, 397 So.2d at 479, the amendment extends the employer's limited tort immunity to certain other defendants. The provision grants a defendant, possessing a certain status, the right to plead the affirmative defense of immunity that may be asserted as a procedural bar against an otherwise viable negligence action. While tort immunity is not specifically enumerated as an affirmative defense in La. C.C. P. art. 1005, it is well settled that the list therein is illustrative, not exclusive.[3] Maraist & Lemmon, Louisiana Civil Law Treatise, Civil Procedure, § 6.9 (West 1999). This Court has held that "status" as an "employer," with respect to a statutory employer asserting the employer's immunity from suit under La. R.S. 23:1032, is a special defense, or affirmative defense, that must be specifically pled in an answer and for which the one asserting the defense has the burden of proof. La. C.C. P. art. 1005; Berry v. Holston Well Serv., Inc., 488 So.2d 934 (La.1986).[4] Likewise, the tort immunity provided by the statute for an executive officer is based upon the individual's "status," and is an affirmative *1268 defense. It is not a law evaluating the conditions of the legality of the defendant's conduct; rather, it serves as a vehicle for asserting a substantive defense that defeats an otherwise viable negligence claim. The employer or executive officer may defeat an action in negligence asserted by an employee, his representative or beneficiary, by interposing this affirmative defense established in their favor by La. R.S. 23:1032.[5]
Because the immunity provision in La. R.S. 23:1032 is not properly characterized as law governing conduct, we conclude that the 1976 amendment granting immunity to executive officers does not evaluate the conditions of liability or attach new legal consequences to past acts and does not, at least for that reason, operate retroactively in the instant case.
Turning to the second situation, Planiol explains that a law is operating retroactively when its application would go "back to the past" to "modify or suppress the effects of a right already acquired." This principle is well known in our jurisprudence governing the accrual of causes of action and vested rights. If a party acquires a right to assert a cause of action prior to a change in the law, that right is a vested property right, protected by the due process guarantees. If retroactive application of the law would divest that party of such a vested right, then retroactive application could be constitutionally impermissible. *1269 Cole v. Celotex, 599 So.2d at 1061. "Once a party's cause of action accrues, it becomes a vested property right that may not constitutionally be divested." Cole v. Celotex, 599 So.2d at 1063 (citing Crier v. Whitecloud, 496 So.2d 305, 308 (La.1986); Faucheaux v. Alton Ochsner Med. Found. Hosp. & Clinic, 470 So.2d 878, 879 (La.1985); Lott v. Haley, 370 So.2d 521, 524 (La.1979); Burmaster v. Gravity Drainage Dist. No. 2, 366 So.2d 1381, 1387 (La.1978); Marcel v. Louisiana State Dep't of Public Health, 492 So.2d 103, 109-10 (La.App. 1st Cir.), writ denied, 494 So.2d 334 (La.1986)). Therefore, "statutes enacted after the acquisition of such a vested property right ... cannot be retroactively applied so as to divest the plaintiff of his vested right in his cause of action because such a retroactive application would contravene the due process guaranties." Cole v. Celotex, 599 So.2d at 1063 (quoting Faucheaux v. Alton Ochsner Med. Found. Hosp. & Clinic, 470 So.2d 878, 879 (La.1985)).
Thus, in order for the plaintiffs in this case to succeed in their argument that the amendment operates retroactively, they must have acquired a vested right in the cause of action prior to the statute's effective date.[6] A negligence cause of action will arise only upon the happening of a wrongful act and the existence of an injury resulting in legally cognizable damages. However, "where the injury has not yet occurred and the cause of action has not yet vested, the guarantee of due process does not forbid the creation of new causes of action or the abolition of old ones to attain permissible legislative objectives." Progressive Sec. Ins. Co. v. Foster, 97-2985, p. 23 (La.4/23/98), 711 So.2d 675, 688 (quoting Burmaster v. Gravity Drainage Dist. No. 2 of the Parish of St. Charles, 366 So.2d 1381, 1387 (La.1978) (citations omitted)). The federal constitution does not impinge on a state's freedom to create immunities in adjudication. Progressive Sec. Ins. Co., 97-2985, p. 23, 711 So.2d at 688 (quoting Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982)). Louisiana jurisprudence establishes that the power to regulate causes of action rests within the purview of the legislature and this includes the power to replace or abolish causes of action for personal injury. Progressive Sec. Ins. Co., 97-2985, p. 23, 711 So.2d at 688.
Accordingly, we must determine whether the plaintiffs' cause of action for the negligent wrongful death of Mr. Walls arose, and therefore became a vested interest, before the legislature acted to immunize the executive officers. Whether the plaintiffs' cause of action arose prior to the amendment's October 1, 1976 effective date depends upon when the plaintiffs' injury occurred.
In Louisiana, the wrongful death action is authorized by La. C.C. art. 2315.2. "If a person dies due to the fault of another, suit may be brought ... to recover damages which [the statutory beneficiaries] sustained as a result of the death."[7] La. C.C. art. 2315.2. The provision clearly and unambiguously expresses that the wrongful death action compensates the *1270 beneficiaries for their own injuries suffered as a result of the victim's death. Therefore, the plaintiffs' injury in a wrongful death action occurs when the victim dies. This Court has twice recognized that the wrongful death action could not arise until the date of the victim's death. Guidry v. Theriot, 377 So.2d 319 (La.1979), and Taylor v. Giddens, 618 So.2d 834, 840 (La.1993).
Because the wrongful death action arises at the death of the victim, and compensates the beneficiaries for their injuries that occur at the moment of the victim's death and thereafter, the plaintiffs' injury in the instant case occurred upon the death of Mr. Walls, and not before. Since the plaintiffs could not have been injured until Mr. Walls' death, and their cause of action for wrongful death did not arise prior to that date, it necessarily follows that the plaintiffs could not have acquired a "right" in their cause of action for wrongful death prior to March 17, 1995. Therefore, we find that no right acquired in a cause of action for the wrongful death of Mr. Walls prior to the October 1, 1976 effective date of La. R.S. 23:1032, as amended. In sum, application of La. R.S. 23:1032 to the instant case does not go back to the past either to evaluate the conditions of the legality of a past act, or modify or suppress the effects of a right already acquired.
We conclude that application of the 1976 amendment to La. R.S. 23:1032 in the instant case does not constitute retroactive operation. The amendment to La. R.S. 23:1032 operates prospectively, applying to causes of action arising after its October 1, 1976 effective date. Since the plaintiffs' cause of action for the negligent wrongful death of Mr. Walls arose after the statute's effective date, Century's exception of no cause of action and motion for partial summary judgment should have been sustained.

IV.
In ordinary tort cases, the injury producing conduct and the resulting injury or damage usually occur contemporaneously, whereas in long-latency disease cases, the damage does not manifest itself for many years following the conduct from which it arose. Due to this distinction between the ordinary tort case and the occupational lung disease case, the plaintiffs urge this Court to abandon the traditional approach to determining the applicable law that we have employed today, and employ instead the "tortious exposures" test articulated in Cole v. Celotex, 599 So.2d 1058 (La.1992). The plaintiffs interpret Cole to require all long-latency occupational lung disease cases to be governed by the law in effect on the date the victim was exposed to the disease causing agent. We disagree.
Cole should not be read so expansively. In Cole, we recognized that cases arising from occupational exposures present peculiar difficulties in determining when an injured plaintiffs cause of action accrues.
The difficulties in asbestosis cases arise because, unlike in traditional personal injury cases in which the damage results from a single, identifiable act causing traumatic injury, in asbestosis cases the damage results from a continuous processa slow development of this hidden disease over the years. Compounding the problem, asbestosis cases are characterized by a lengthy latency period typically ranging a decade or two and, consequently, a lengthy temporal separation between the tortious conduct and the appearance of injury. This lengthy latency period renders efforts to pinpoint the date on which the disease was contracted virtually impossible, medically and legally. Further, this inability to pinpoint when injuries were sustained in asbestosis cases renders determining the date on which a plaintiffs cause of action accrued a herculean task.
Cole, 599 So.2d at 1065 (internal citations omitted).
Cole involved the claims of three employees suffering from injuries caused by *1271 long-term exposure to asbestos who sued the executive officers of their employer for failure to provide them with a safe workplace. One issue presented to the Court involved the effect of an intervening change in the law. The Court was required to decide whether Act 431, which ushered in the modern comparative fault system, applied to the case when the employees' exposures occurred during precomparative fault law, while their diseases did not manifest until after the change in the law. In Cole, this Court found:
... the key relevant events giving rise to a claim in long-latency occupational disease cases are the repeated tortious exposures resulting in continuous, ongoing damages, although the disease may not be considered contracted or manifested until later. We further conclude that when the tortious exposures occurring before Act 431's effective date are significant and such exposures later result in the manifestation of damages, pre-Act law applies.
Cole, 599 So.2d at 1066. Since the Cole plaintiffs' exposures occurred under pre-Act law, we held that pre-comparative fault law should apply under the facts of that case.
While we acknowledge the factual similarities between Cole and the instant case, we find the distinguishing factors dispositive, and reject the plaintiffs' contention that Cole's "tortious exposures doctrine" applies to determine the applicable law in the instant case.[8] In Cole, the Court's decision turned on unique language in Act 431.[9] Act 431 included a *1272 "clear and unmistakable expression of legislative intent regarding prospective application," as Section 4 of the Act provided:
The provisions of this act shall not apply to claims arising from events that occurred prior to the time this act becomes effective.
Cole, 599 So.2d at 1064 (emphasis added). The Court determined that in the asbestosis context, "events" under Act 431 would be construed as the repeated exposure to asbestos dust that occurred prior to passage of the statute. The plaintiffs herein assert that because the pivotal "events" giving rise to their wrongful death claims were defendants' pre-1976 conduct exposing Mr. Walls to silica dust, Cole requires the application of the pre-amendment law.[10] We disagree for at least two reasons.
First, because the Cole plaintiffs only alleged the negligence of the executive officers between 1945, the year they began work, and 1976, the year the legislature amended La. R.S. 23:1032, the applicability of the amendment creating the new immunity was not at issue in that case. Cole, 599 So.2d at 1061. Furthermore, Cole's interpretation of the legislature's intent regarding Act 431 does not apply to the interpretation of La. R.S. 23:1032.[11] We need not delve into the legislative intent concerning the temporal application of Act 147 because we determined that the amendment is not operating retroactively in the instant case. Therefore, Cole's analysis under La. C.C. art. 6 concerning the legislative intent of a different statute has no application in this case.[12]
*1273 Second, the instant case does not involve a direct tort action or a survival action, such as gave rise to Cole, but instead presents an action for wrongful death. In Louisiana, it is well established that the survival action and the wrongful death action are two different causes of action that arise at different times. In Taylor v. Giddens, 618 So.2d 834, 840 (La. 1993), we distinguished the wrongful death and survival actions.
Although both actions arise from a common tort, survival and wrongful death actions are separate and distinct. Each right arises at a different time and addresses itself to the recovery of damages for totally different injuries and losses. The survival action comes into existence simultaneously with the existence of the tort and is transmitted to beneficiaries upon the victim's death and permits recovery only for the damages suffered by the victim from the time of injury to the moment of death. It is in the nature of a succession right. On the other hand, the wrongful death action does not arise until the victim dies and it compensates the beneficiaries for their own injuries which they suffer from the moment of the victim's death and thereafter. Wrongful death damages compensate beneficiaries for their own injuries.
Taylor v. Giddens, 618 So.2d 834, 840 (La. 1993) (internal citations omitted).
The survival and wrongful death actions are totally separate and distinct causes of action that arise at different times and allow recovery of completely different damages. Guidry, 377 So.2d 319. Cole established the "exposure theory" for determining the applicable law within the context of the direct tort action and survival action. "[G]eneral expressions, in every opinion, are to be taken in connection with the case in which those expressions are used." Landgraf, 511 U.S. at 265, 114 S.Ct. at 1497, 128 L.Ed.2d at 252. Therefore, Cole's rationale cannot apply to the instant case involving a wholly distinct cause of action for wrongful death.

V.
The plaintiffs urge this Court to find that the wrongful death action is a derivative action "deriving from the wrongful act and injury to the victim whose eventual death results in further injury to the survivors." The plaintiffs argue that the right to recover, or the "right of action," arises with the wrongful conduct under La. C.C. art. 2315 that provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." It is the "act" that causes the injury and gives rise to the right to recover damages, and the wrongful death is derivative of the victim's underlying injury. Thus, the argument continues, the wrongful death plaintiff's "right of action" arises at the time of injury to the victim and is thus governed under the same law as that which governs the victim's action. The law in effect on the date of the tortious conduct applies in both the tort victim's action and the wrongful death claim because La. C.C. art. 2315 "regulates conduct by holding people accountable for their "acts causing damage."
The plaintiffs loosely base their argument concerning the derivative nature of the wrongful death right of action upon our statement in Cole as interpreted by Coates v. A.C. & S., Inc., 844 F.Supp. 1126 (E.D.La.1994). In Cole, we said, "[t]he substantive right of action for eventual contribution vests at the time of the delict.... Thus, the joint tortfeasor has a right of action from the time of the tort, but the cause of action matures only upon payment." Cole, 599 So.2d at 1071(emphasis added). In Coates, the court held that the wrongful death and contribution causes of action are both "derivative" claims, simply adding to the negligence cause of action formula "another event, (i.e. payment on the claim in the case of contribution and death of the victim in the case of wrongful *1274 death) and another party, (i.e. the co-tortfeasor in the case of contribution and beneficiaries in the case of wrongful death.)" Coates, 844 F.Supp. at 1131. Coates concluded that, in the wrongful death action, like the contribution action, "while the right of action vests at the time of the tort, the cause of action for wrongful death does not accrue or mature until the happening of a later event (i.e. death of the victim in the case of wrongful death and payment of the claim in the case of contribution.)" Id.
We do not consider the wrongful death action to be a derivative cause of action. Rather, the wrongful death action is an independent and distinct action that arises even in the absence of a viable personal injury action by the direct tort victim and compensates the beneficiaries for their own individual injury arising out of the victim's death. Taylor v. Giddens, 618 So.2d at 840. In Callais v. Allstate Ins. Co., 334 So.2d 692, 700 (La.1975) this court discussed the "nature" of the wrongful death action.
In the context of Article 2315, it is evident that Wrongful [sic] death is a relational concept. It embraces conduct that causes the death of another. It is bilateral in the sense that two parties are involved: the actor, who causes death, and the victim, whose death gives rise to the cause of action.
Given this relational or causative origin, one could be mislead into viewing the wrongful death action as derivative. However, in Taylor v. Giddens, 618 So.2d at 840, this Court left no doubt that the wrongful death action is an independent and separate cause of action. In cataloging the distinctions between the wrongful death action and the survival action we found,
Although both actions arise from a common tort, survival and wrongful death actions are separate and distinct. Each right arises at a different time and addresses itself to the recovery of damages for totally different injuries and losses....
* * *
... [T]he survival action, which is a[sic] derivative of the malpractice victim's action, is linked to the inception of the tortious act, omission or neglect. The action is based upon the victim's right to recovery being transferred by operation of law to the beneficiary. The action is dependent upon the victim having a viable malpractice action on the date of death....
Taylor v. Giddens, 618 So.2d at 840 (emphasis added).
Likewise we characterized the consortium claim as derivative of a primary victim's injury in Ferrell v. Fireman's Fund Ins. Co., 96-3028, p. 8 (La.7/1/97), 696 So.2d 569, 574. In that case we explained that "the derivative claim does not come into existence until someone else is injured,"and noted that a derivative claim, "may be regarded as a secondary layer of tort liability to the primary victim." Id. (emphasis added). As we made clear in our discussion earlier, as well as in Taylor, the wrongful death claim compensates the beneficiaries for their own injuries, separate and distinct from the victim's injuries, which are compensated through the derivative survival action. The wrongful death cause of action, therefore, could not "be regarded as a secondary layer of tort liability to the primary victim." Id. The wrongful death cause of action is not a derivative cause of action and plaintiffs' arguments founded on this concept are also without merit.

CONCLUSION
Because we find that the amendment to La. R.S. 23:1032 does not apply retroactively but operates prospectively only, and the plaintiffs' cause of action for the negligent wrongful death of Mr. Walls arose after the October 1, 1976 effective date of the amendment, we hold that Century's exception of no cause of action and motion *1275 for partial summary judgment should have been sustained. Therefore, the judgment of the court of appeal is hereby affirmed and this case is remanded to trial court for further proceedings.
AFFIRMED AND REMANDED.
LEMMON, J., dissents and assigns reasons.
LEMMON, J., Dissenting
The significant issue of law in this case is whether a wrongful death cause of action, which arises out of a long-latency occupational disease, is governed by the law in effect on the date of death (1995) or by the law in effect at the time of the wrongful conduct that eventually caused that death (1964-1970). My major point of disagreement with the majority is my conclusion that a wrongful death action, like a survival action, involves a derivative claim.
The majority, relying on Burmaster v. Gravity Drainage Dist. No. 2, 366 So.2d 1381 (La.1978), concludes that the Legislature could abolish a cause of action against executive officers for wrongful death during the interval between the wrongful conduct and the date of death, because the injury had not yet occurred and the cause of action had not yet vested. However, the Burmaster decision involved a traditional tort, while the present case involves a long-latency occupational disease allegedly caused by negligent and significant tortious exposures. In Burmaster, both the accident that injured the direct tort victim and his ultimate drowning death occurred simultaneously, and those events both occurred after the effective date of the intervening legislative act. In the present case, the significant tortious exposures that injured Walls (and ultimately resulted in his death) occurred and the disease was diagnosed before the effective date of the 1976 amendment, although his death occurred years later in 1995. Because of this factual distinction, the general tort principles of accrual and vesting of rights articulated in Burmaster are inapplicable in this context. As noted in Cole v. Celotex Corp., 599 So.2d 1058 (La.1992), these principles are "inept" for addressing the unique problems presented by long-latency occupational diseases.
Of equal significance, the statement in Burmaster that a wrongful death remedy is purely a statutory creation subject to legislative repeal is based on the antiquated common law notion that, in the absence of a statute, no cause of action existed for a tort-caused death, a notion this court erroneously borrowed from common law in the often criticized decision in Hubgh v. New Orleans & C.R. Co., 6 La. Ann. 495 (1851).[1]
On several occasions, this court has recognized that the holding in Hubgh expressed a mistaken view of the nature of wrongful death actions in Louisiana. Nathan v. Touro Infirmary, 512 So.2d *1276 352, 355-56 (La.1987)(noting that "our article 2315 was drawn directly from French law and was misinterpreted in Hubgh"); Callais v. Allstate Ins. Co., 334 So.2d 692 (La.1975); King v. Cancienne, 316 So.2d 366 (La.1975). See also Ferdinand F. Stone, 12 Louisiana Civil Law Treatise: Tort Doctrine § 74 (1977)(characterizing Hubgh as wrongly decided and as "spawn[ing] ... unsound doctrine"). Nevertheless, "even though the Hubgh result was subsequently discredited by the courts and the commentators, the effects of Hubgh remain today." Thomas J. Andre', Louisiana Wrongful Death and Survival Actions § 1-2 (2d ed.1993). One such lingering effect is the mistaken notion that wrongful death actions are simply statutory creations subject to legislative repeal without due process protection.
The Louisiana survival and wrongful death actions spring from the fountainhead of Louisiana tort law, Civil Code Article 2315, and the subsequently enacted Articles 2315.1 and 2315.2 (specifically pertaining to survival and wrongful death actions) simply limit those actions to specific beneficiaries and to specific prescriptive periods.[2] A wrongful death action, like a survival action, is a right derived from an underlying injury sustained by the direct tort victim.[3] Moreover, each action is derivative in that there would be no wrongful death action or survival action for the beneficiaries but for the tortious conduct to the direct tort victim. Wrongful death and survival actions are separate causes of action, but both derive from the same injury. When death follows the injury to the direct tort victim, a new set of claimants (beneficiaries) comes into being, but there remains only one tort victim and one injury.
The direct tort victim's own action for pre-amendment tortious exposures, as well as the beneficiary's survival action, clearly are not barred by the 1976 amendment. One federal court has held that if the survival action is governed by the preamendment law, then the same law should govern the wrongful death action arising out of the same underlying tortious conduct to the same tort victim. Coates v.A.C. and S., Inc., 844 F.Supp. 1126, 1131 (E.D.La.1994). The court in Coates, which was an action against manufacturers, extended the rationale of Cole to the wrongful death context, reasoning that "the trigger for the applicable law is `exposure' to the injury producing harm, whether the case is a survival or a wrongful death *1277 action." In so extending Cole, the court relied upon the derivative nature of wrongful death actions and analogized them to contribution actions, stating that both contribution and wrongful death actions "are essentially derivative claims which each add to the negligence cause of action formula simply another event and another party." 844 F.Supp. at 1131. Stressing that it is not simply a "death" action, but rather a "wrongful death" action, the court stated:
[T]he beneficiaries' right to those damages originates with the wrongful act of the tortfeasor which causes injury and subsequent death. The claim at issue is not simply a death action but a wrongful death action. It merely adds to the article 2315 formula another party and another event, i.e., in addition to the tortfeasor's fault, and the victim's injury, in the event that the victim dies on account of the injury, his survivors may recover from the tortfeasor for the damage they sustain as a result of the victim's death.
844 F.Supp. at 1129-30.
As the court in Coates reasoned, the fact that "the victim may eventually die as a result of long-term disease resulting from continuous pre-Act exposure is simply the beginning of the end point of prescription of the long-term damage/death claim." 844 F.Supp. at 1130. Hence, death marks the point at which prescription begins to accrue, but the wrongful death cause of action nevertheless relates back to the injury to the tort victim. Significantly, wrongful death beneficiaries have been allowed to compromise their cause of action prior to the tort victim's death. Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741. Indeed, wrongful death actions have been recognized by this court to be relational in nature.[4]Callais v. Allstate Ins. Co., 334 So.2d 692 (La.1975)(on reh'g).
In summary, I conclude that a wrongful death cause of action is derivative of the injury incurred by the direct tort victim, subject to the specific limitations in the Civil Code, and that a cause of action from wrongful death vests at the time of the injury to the direct tort victim, although prescription does not begin to run until the death of the tort victim. In the case of a long-latency occupational disease, as opposed to a traditional tort, I would extend our decision in Cole and hold that the law applicable to the wrongful death action is the law as it existed at the time of the significant tortious exposure that caused the disease (or at least the time of diagnosis of the disease, as in this case).
To hold that the direct tort victim and the survival action beneficiaries have a cause of action in the context of a longlatency occupational disease against the tort victim's employer's executive officers, while the wrongful death beneficiaries do not, is an arbitrary result that is not required by the fact that a wrongful death cause of action does not begin to accrue for prescription purposes until the death. Indeed, to avoid a similar arbitrary result, we recognized a wrongful death cause of action in favor of the parents of an unborn child in Danos v. St. Pierre, 402 So.2d 633 (La.1981)(on reh'g). There, we reasoned it would be illogical and arbitrary to hinge the existence of a wrongful death cause of action on whether the child lived outside the womb for a few minutes. Likewise, it is arbitrary to allow a wrongful death cause of action against executive officers if a quick death resulted before the effective date of the 1976 amendment, but to disallow such a cause of action when the death results from a lingering disease caused by the same pre-1976 tortious conduct.
*1278 When, as in the instant case, all of the direct victim's tortious exposures occurred before the 1976 amendment, application of that amendment to bar the tort victim's beneficiaries' wrongful death cause of action violates the rules involving retroactive application of laws. Like the direct tort victim's own cause of action, the wrongful death beneficiaries' cause of action is also entitled to due process protection, and the 1976 amendment should not be applied retroactively to bar such claims arising prior to the amendment from long-latency occupational disease caused by significant tortious exposure.
NOTES
[*] Calogero, C.J., not on panel. See Rule IV, Part 2, § 3.
[1] Although the trial court made additional rulings, the only portion of the trial court's judgment properly before this Court is the exception of no cause of action on the negligent wrongful death claim which the court of appeal reversed. The trial court additionally ruled in Century's favor as to plaintiffs' loss of consortium claim; sustained the exception of failure to plead fraud with particularity and granted leave to amend; and overruled Century's exception of lis pendens. The trial court sustained Century's exception as to plaintiffs' intentional tort wrongful death claim and granted leave to amend. Thus, the plaintiffs' intentional tort wrongful death claims are still pending in the district court and are not made the subject of this opinion.
[2] The pertinent portion of the statute as amended read:

§ 1032. Exclusiveness of rights and remedies; employer's liability to prosecution under other laws
A. (1)(a) The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease....
La. R.S. 23:1032 as amended by Acts 1976, No. 147 (emphasis added).
This statute has been amended several times since 1976. However, since the other amendments and their effect are not at issue in this case we will not discuss them.
[3] La. C.C. P. art. 1005, entitled "Affirmative defenses," provides:

The answer shall set forth affirmatively arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, division, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, transaction or compromise, and any other matter constituting an affirmative defense. If a party has mistakenly designated an affirmative defense as an incidental demand, or an incidental demand as an affirmative defense, and if justice so requires, the court, on such terms as it may prescribe, shall treat the pleading as if there had been a proper designation.
[4] "The plea of "statutory employer" under the provisions of section 1061 is an affirmative defense and the burden of proof is upon the party asserting ithere Sohio." Berry v. Holston Well Serv., Inc., 488 So.2d 934, 939 (La. 1986) (internal citations omitted). Berry relied in part on Benson v. Seagraves, which reiterated that the defendant is saddled with the burden of proving status entitling the defendant to the immunity provided for in La. R.S. 23:1032. Benson v. Seagraves, 436 So.2d 525, 528 (La.1983) (and cases cited therein).
[5] The plaintiffs refer us to Pitre v. GAF Corp., 97-1024 (La.App.1 Cir. 12/29/97), 705 So.2d 1149, in which the court refused to apply the Louisiana Products Liability Act ("LPLA") in a product liability action for wrongful death from cigarette and asbestos exposures because the decedent's exposures occurred prior to the LPLA's enactment. The plaintiffs argue that like the LPLA, the amendment to La. R.S. 23:1032 regulates the "acts," or conduct of the tortfeasor. Because La. R.S. 23:1032 regulates conduct, if applied to the instant case, it would operate retroactively and impermissibly absolve the defendants of liability for past acts. While we agree with the principle of law urged by the plaintiffs because it is essentially the same principle upon which we now rely, we find ourselves in disagreement with the plaintiffs' analogy. Unlike the exclusivity provision at issue in this case, the LPLA at issue in Pitre sets out the elements of a cause of action for product liability, the standards for evaluating the tortfeasor's conduct, and the remedies or consequences of such conduct. Therefore, it may easily be said that the LPLA evaluates the conditions of the defendant's liability for the conduct at issue and under Planiol's formula would certainly operate retroactively under the facts of that case. By contrast, La. R.S. 23:1032, as amended, performs a very different function. As stated more fully above, the statute provides an affirmative defense of immunity from negligence actions arising from workplace injury and does not regulate conduct of the tortfeasor. Thus, even though we agree with plaintiffs' assertions that conduct should be evaluated under the laws governing standards of care and regulations in effect at the time the alleged conduct took place, we do not agree that the immunity provision in La. R.S. 23:1032 is properly characterized as law governing conduct.

We note that the Pitre court utilized the "significant exposure" test from Cole v. Celotex, 599 So.2d 1058, to arrive at its conclusion. While we agree with the result reached in this case for the reasons expressed, we do not agree with its reliance on Cole. As we will explain below, Cole's rationale is inapplicable to wrongful death cases.
The plaintiffs also rely upon Arledge v. Holnam, Inc., 957 F.Supp. 822 (M.D.La.1996) in which the plaintiff worked for the defendant from 1956 to 1984, where he was exposed to silica dust. Three months after his retirement, September 4, 1984, and long before plaintiff knew of his damages, La. C.C. art. 2315.3 became effective allowing punitive damages for certain categories of activities involving hazardous substances. The federal court refused to apply the newly enacted La. C.C. art. 2315.3 to conduct that occurred before the statute's effective date, even though the damages did not arise until after the statute's effective date. Arledge, 957 F.Supp. at 828. The court relied on Planiol's definition of retroactivity and found that the statute evaluates the conditions of the legality of conduct that occurred before its effective date and therefore would operate retroactively. Id. at 827. The court held that La. C.C. art. 2315.3 could not be applied retroactively. Id. at 828. Just as with the Pitre decision urged by the plaintiffs, we find the issues in Arledge to be distinguishable from the instant case and are not persuaded by its reasoning. We must note that we express no opinion whatsoever as to the correctness of the federal court's judgment in Arledge.
[6] These interrelated arguments, which are crafted from this Court's decision in Cole, are best answered in our following discussion of Cole. Thus, we will first address those fundamental principles of the law which govern the resolution of this case, and then shift our focus to the Cole decision, and the merits of the plaintiffs' arguments based thereon.
[7] La. C.C. art. 2315.2 provides that the beneficiaries who may recover such damages are:

(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
(2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving.
(3) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving.
(4) The surviving grandfathers and grandmothers of the deceased, or any of them, if he left no spouse, child, parent, or sibling surviving.
[8] The Louisiana Fifth and Fourth Circuit Courts of Appeal in Young v. E.D. Bullard Co., 97-657 (La.App. 5 Cir. 11/25/97), 703 So.2d 783 and Gauthe v. Asbestos Corp., 97-656 (La.App.5 Cir. 11/25/97), 703 So.2d 763, held that wrongful death actions against executive officers were barred by the 1976 amendment when the decedent died after the amendment's effective date. In Meredith v. Asbestos Corp., C/W Perque v. Avondale Ind. Inc., 97-2593, 28-0211 (La.App. 4 Cir. 2/18/98), 707 So.2d 1334, the fourth circuit refused to apply Cole in wrongful death claims citing its holding in Holmes v. Pottharst, 438 So.2d 622 (La.App. 4 Cir.1983) writ denied, 447 So.2d 1076 (La.1984), that a wrongful death cause of action arises at the time of death, and the law effective on the date of death applies to the wrongful death action.

In Meredith, the concurring judges called attention to the "nonsensical" approach of applying different sets of laws in survival and wrongful death cases of long latency occupational lung diseases by hinging the applicable law on the date each cause of action arose. Meredith, 97-2593, p. 6, 707 So.2d at 1340.
While we appreciate the concern over the integrity and consistency of the state law, we must make clear that today we do not establish a per se rule requiring the application of different laws to survival and personal injury actions and wrongful death actions. Rather, what we adopt herein today is a case by case approach to determining, in cases involving facts that span enough legislative sessions to allow for the intervention of new law, whether any intervening statute, if applied to that case, would operate retroactively. If the statute would operate retroactively under Planiol's definition, then, the two-fold analysis from La. C.C. art. 6, with which all courts are familiar, must be made. Making the determination of when the cause of action arose for the various causes of action which might be asserted merely provides the temporal guidepost from which a court may determine whether the intervening statute operates retroactively or prospectively and the consequences that flow from that determination will differ with each case.
[9] In Cole, this Court explained:

[W]hile we do not disagree with the Third Circuit's finding that Act 431 is substantive and that these plaintiffs' causes of action accrued before the Act's effective date, we opt not to hinge our decision on either the Act's classification, or the dates on which plaintiffs' causes of action accrued. Instead, we find dispositive the first part of the LSA-C.C. Art. 6 inquiryexpressed legislative intent.
Act 431 contains a clear and unmistakable expression of legislative intent regarding prospective application, providing in Section 4 of the Act that "[t]he provisions of this act shall not apply to claims arising from events that occurred prior to the time this act becomes effective," and in Section 7 of the Act that "[t]he provisions of this Act shall become effective on August 1, 1980." Indeed, the mere inclusion of this type of a provision in a legislative enactment evidences a clear legislative intent that the enactment be given prospective application. 1 A Sutherland Stat. Const. Sec. 20.24 (4th Ed.1985).
* * *
The issue we must address, therefore, is how to define the relevant "events" in longlatency occupational disease cases for purposes of determining whether pre-Act, or comparative fault, law applies.
Cole v. Celotex Corp., 599 So.2d at 1064.
[10] The Louisiana First Circuit Court of Appeal, in Pitre v. GAF Corp., 97-1024 (La.App.1 Cir. 12/29/97), 705 So.2d 1149, held that Cole's exposure rule was applicable in the wrongful death action to determine whether the new Louisiana Products Liability Act (LPLA) or the pre-LPLA law applied. See fn.5, infra.
[11] Act 147, amending La. R.S. 23:1032, is completely silent concerning whether it should be applied prospectively or retroactively. The language interpreted in Cole from Act 431 clearly established the legislative intent that the Act apply prospectively only.
[12] In general, prospective application of new statutes is the rule, with some exceptions allowing for retroactivity, codified in La. C.C. art. 6 which provides:

In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
LSA-C.C. Art. 6. Planiol expressed the same basic rule in his treatise, but also explains the rationale behind the general rule of prospective operation of new statutes.
New laws should not have a retroactive effect because a fact and an act are governed by the law under whose aegis they took place, and because the solution cannot change on account of the circumstance that when the court rules, the law governing such a fact and act is no longer the same.
1 M. Planiol, Treatise on the Civil Law, Sec. 243A (La.St.L.Inst.Trans.1959). If it is found that a statute operates retroactively, La. C.C. art. 6 requires a court to engage in a two-fold inquiry to determine whether the new statute comes within the exceptions to the rule of prospective application and thereby permissibly operates retroactively.
As the Cole Court found that the statute would be operating retroactively if applied to the cases before it, the test from La. C.C. art. 6 had to be applied. In Cole, the Court explained:
First, we must ascertain whether in the enactment the legislature expressed its intent regarding retrospective or prospective application. If the legislature did so, our inquiry is at an end. If the legislature did not, we must classify the enactment as substantive, procedural or interpretive.
Cole v. Celotex, 599 So.2d at 1063.
Of course, there is no need to engage in this familiar two-fold inquiry if the statute at issue does not actually operate retroactively when applied in a particular case. Unlike the statute in Cole, we find that La. R.S. 23:1032 does not operate retroactively in the instant case and there is no need to engage in the classic La. C.C. art. 6 inquiry.
[1] Other state and federal courts have retreated on the original common law theory that there is no remedy for wrongful death in the absence of special legislation. The Court in Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), recognized that a wrongful death action existed in general maritime law, reasoning:

[T]here is no present public policy against allowing recovery for wrongful death. The [wrongful death] statutes evidence a wide rejection by the legislatures of whatever justifications may once have existed for a general refusal to allow such recovery. This legislative establishment of policy carries significance beyond the particular scope of each of the statutes involved. The policy thus established has become itself a part of our law, to be given its appropriate weight not only in matters of statutory construction but also in those of decisional law.
398 U.S. at 390-91. See also David W. Robertson et al., Cases and Materials on Torts 331 (1989)(noting that the court in Gaudette v. Webb, 362 Mass. 60, 284 N.E.2d 222 (1972) followed Moragne to recognize a wrongful death action under common law independent of statute); Jonathan S. Massey and Ned Miltenberg, Wrong Ideas About Wrongful Death Statutes, 33 Trial 24 (Jan.1997)(noting that several jurisdictions have recognized common law attributes of wrongful death action after Moragne).
[2] The wrongful death action "really springs from the first sentence of article 2315," and "the amendments [Articles 2315.1 and 2315.2] merely regulate the exercise of the right of action but do not create it." Stone, supra at § 75. Under French doctrine, "this [wrongful death] damage is necessarily suffered by the victim before his death. No matter how rapidly the death follows the blows, in that instant, however brief it was, where the victim already wounded has not yet died, when the patrimoine still existed, the obligation to indemnify arises." Stone at § 75 n. 58.
[3] In In re Hawaii Federal Asbestos Cases, 854 F.Supp. 702, 712 (D.Hawai'i 1994), the court explained:

The foregoing authorities demonstrate that a spouses's wrongful death action is derivative of the decedent's injury and dependent for its viability upon the nature of the harm suffered by the decedent. If the harm suffered by the decedent was not actionable, because the tortfeasor was immune from suit, or because the tortfeasor owed no duty to the decedent, then the wrongful death action for damages derived from that harm must necessarily fail.
However, the wrongful death action is a separate and independent action in the sense that it seeks different, if derivative damages, accrues at the time of death rather than at the time of injury, and is subject to a different statute of limitations. Assuming that the underlying injury or harm was actionable at the time it was sustained by the decedent, the derivative wrongful death action is entitled to go forward subject to the separate procedures and defenses specifically denominated in the wrongful death statute. (emphasis added).
Significantly, Hawaii is the only state that has never adopted the common law rule rejecting a non-statutory action for wrongful death. Stuart M. Speiser, et al., 1 Recovery for Wrongful Death and Injury § 1:3 (3d ed.1997).
[4] This court in Callais recognized the relational nature of a wrongful death action, stating:

"[W]rongful death is a relational concept. It embraces conduct that causes the death of another. It is bilateral in the sense that two parties are involved: the actor, who causes the death, and the victim, whose death gives rise to the cause of action."
334 So.2d at 700 (emphasis in original).