# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-377

**LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT**

**VERSUS**

**KEVIN FITCH AND BAYOU LAND INVESTMENT, INC.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 983048
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Marc T. Amy, and Glenn B. Gremillion, Judges.

**AFFIRMED.**

**John Alfred Mouton, III**
**Post Office Box 3244**
**Lafayette, LA 70502**
**(337) 233-1199**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
 **Lafayette City-Parish Consolidated Government**

**Kaliste Joseph Saloom, III**
**Saloom & Saloom**
**Post Office Drawer 2999**
**Lafayette, LA 70502-2999**
**(337) 234-0111**
**COUNSEL FOR DEFENDANT/APPELLANT:**
 **Kevin Fitch**
 **Bayou Land Investment, Inc.**

AMY, Judge.

The Lafayette City-Parish Consolidated Government brought this enforcement action against the defendant property owners asserting violations of an ordinance related to the operation of salvage yards. In particular, the City complained that the defendants failed to comply with the enclosure requirements relevant to this type of business. The trial court found in favor of the City, ordering enforcement. The defendants appeal. For the following reasons, we affirm.

### Factual and Procedural Background

Defendants, Bayou Land Investments, Inc. and its owner, Kevin Fitch, purchased a tract of land in the City of Lafayette in 1993. The property abuts Ambassador Caffery Parkway. The defendants operate an auto salvage yard on that property. Prior to purchase, use of that portion of property zoned for light industry as an auto salvage yard was approved by the zoning board of the City. The record indicates that, by March 1995, the City, through the Director of Zoning and Development, notified Mr. Fitch that his business was in violation of zoning requirements due to the use of the residentially zoned portion of the property for salvage operations. Furthermore, he was ordered to remove junked vehicles not contained in the area zoned for light industrial use. Mr. Fitch was also ordered to comply with City fencing requirements. Subsequently, in May 1995, Mr. Fitch sought approval of the City, through Environment Quality Manager Bette Vidrine, to erect a fence using a specific type of fabric. The City approved the proposal, notifying Mr. Fitch by letter dated March 3, 1995.[1] An internal memo indicates that

--------------------------------

[1]The letter states:

The City is granting its approval to your proposed fence, consisting of: an eight-foot high grid as you have already erected on parts of Des Jacques Road, covered by a double thickness of Nico-Shade Fabric, Style 43419, with specifications as on the attached spec sheet. This fence is to surround the property owned by Bayouland

Mr. Fitch informed the City that he was proceeding with the work. According to Ms. Vidrine, however, the approved cloth was not used for the fence. She explained that, despite Mr. Fitch's efforts, there has never been a sight-proof fence on the property and that she knew of several prosecutions regarding the fence.

This case, which commenced with the City of Lafayette filing a Petition for Injunctive Relief and For Abatement of a Nuisance in June 1998, involves, in part, the question of whether the defendants complied with the fencing requirements attendant to auto salvage businesses. The City alleges that the defendants have consistently failed to meet those requirements. The City presented evidence indicating this failure is not only ongoing, but is of a longstanding nature. The defendants contend that they should be subject to the City Ordinance existing at the time their business commenced and not to more stringent fencing requirements subsequently enacted. The issue of which ordinance was to be enforced became an issue in the instant litigation.

At the time of the purchase, the City Code of Ordinances, adopted in 1965, was in effect. A portion of that ordinance related to salvage yards. In particular, Chapter 14¼ was entitled "Junked Property." Section 14 ¼-12, which is entitled "Enclosure required," provided at that time as follows:

> No person, firm, or corporation shall store or offer for sale any iron and steel junk, rags or wreckage of motor-driven vehicles or automobiles or trucks, including parts and accessories thereof, and no person, firm, or corporation shall wreck or dismantle said items for commercial purposes on any open lot or parcel of ground that is not properly enclosed on all boundary lines with a substantial fence not less

Investments on Des Jacques Road being utilized as a salvage yard.

I am enclosing a copy of Mr. Don Fuselier's memo of April 10, 1995, approving same.

You are expected to proceed with construction of this fence immediately

2

than seven (7) feet nor more than ten (10) feet high and properly screening said enclosed area from public view. Such areas or parcels of land, or premises, shall be enclosed with a solid, nontransparent wall or fence, excepting for entrances and exits. Chain-link fencing is permissible if appropriate slates are inserted into the wire mesh to make the fencing nontransparent. The fence or wall shall not contain any poster or advertising of any kind excepting one sign of the owner, lessee, operator, or licensee of said premises on each street frontage not exceeding one hundred (100) square feet in size. Said seven (7) feet minimum height requirement for fences shall not apply to those storage facilities which are in compliance with section 24-106. (Ord. No. 0-1484, § 1, 4-19-77)

Section 14¼-5 of the Code provided that the City could file a petition for abatement in the City Court of Lafayette.

The 1965 Ordinance was repealed and rescinded in 1997, with the Lafayette City-Parish Council adopting Ordinance 0-363-97, which again contained an enclosure requirement at Article IV, Section 14¼ -15. The provision contained a more stringent fencing requirement, providing:

No person, firm, or corporation shall store or offer for sale any recyclable items, paper, iron or steel junk, rags or wreckage of motor-driven vehicles or automobiles or trucks, including parts and accessories thereof, and no person, firm, or corporation shall wreck or dismantle said items for commercial purpose on any open lot or parcel of ground that is not properly enclosed on all boundary lines, except where prohibited by any law or regulation, which enclosure shall be by a substantial fence not less than seven (7) feet nor more than ten (10) feet high and properly screening said enclosed area from public view. In such instances where a law or regulation prohibits the complete enclosure on all boundary lines, there shall be substantial compliance by making as much enclosure as possible of the lot or parcel of ground, except as prohibited by any law or regulation. Any decision as to whether or not the enclosure substantially complies shall be made by the Director of Public Works and/or his designee. The fence shall be uniform in color and in height with all material, including posts and fencing, being of uniform height, color and construction. Said fence shall be wind resistant and able to withstand fifty (50) mile per hour winds, constructed of a solid rigid material, and completely non-transparent and of uniform color. The uniform color shall be any shade of beige, brown, black, dark green or gray. The color shall be approved by the Director of Public Works or his designee prior to installation of the enclosure. Such areas or parcels of land, or premises, shall be

3

enclosed with the aforedescribed solid, non-transparent wall or fence. The fence or wall shall not contain any poster or advertising of any kind excepting one sign of the owner, lessee, operator, or licensee of said premises on each street frontage not exceeding one hundred (100) square feet in size. Said seven-foot minimum height requirement for fences shall not apply to those storage facilities which are in compliance with Section 24-107 of the City of Lafayette Code of Ordinances or any successor provisions in the City-Parish Code of Ordinances.

Section 14 ¼ - 23 provided for a one-year phase-in period.[2] Article V, Section 14 ¼ - 26 provided for violations of the chapter to be punishable as a misdemeanor by fine or a period of imprisonment. It noted that "[e]ach day of violation shall constitute a separate offense." Section 14 ¼ - 27 instructed that: "The prosecution of any such misdemeanor shall be tried in any Court of competent jurisdiction."

Subsequently, in 1998, by Ordinance 0-107-98, the Lafayette City-Parish Council amended the 1997 enclosure provision, further strengthening the wind resistence required of the nontransparent material described in the ordinance. Following the 1998 amendment, Section 14¼-15 required:

No person, firm, or corporation shall store or offer for sale, commercially and/or for profit, any recyclable items, paper, iron and steel junk, rags or wreckage of motor-driven vehicles or automobiles or trucks, including parts and accessories thereof, and no person, firm, or corporation shall wreck or dismantle said items for commercial and/or for profit purposes on any open lot or parcel of ground that is not properly enclosed on all boundary lines, except where prohibited by law or regulation, which enclosure shall be by a substantial fence not less than seven (7) feet nor more than ten (10) feet high and properly screening said enclosed area from public view. In such instances where a law or regulation prohibits the complete enclosure on all boundary lines, there shall be substantial compliance by making as much

---

[2]Section 14¼ - 23, states:

The requirements set forth in Article IV - Enclosures, including but not limited to the necessity for a substantial fence set forth in Sec. 14¼ - 15 shall not become effective until one (1) year after the effective date of this Ordinance. During such period of time, the Director of Public Works or his designee shall inform all parties to be affected by the requirements of this Ordinance and this one (1) year period shall enable and allow such parties a sufficient time to comply with the provisions of Article IV - Enclosures and the required fencing.

enclosure as possible of the lot or parcel of ground, except as prohibited by any law or regulation. Any decision as to whether or not the enclosure substantially complies shall be made by the Director of Public Works and/or his designee. The fence shall be uniform in color and in height with all material, including posts and fencing, being of uniform height, color and construction. Said fence shall be wind resistant and able to withstand one-hundred (100) mile per hour winds, constructed of a solid rigid material, and completely non-transparent and of uniform color. The uniform color shall be any shade of beige, brown, black, dark green or gray. The color shall be approved by the Director of Public Works or his designee prior to installation of the enclosures. Such areas or parcels of land, or premises, shall be enclosed with the aforesaid solid, non-transparent wall or fence. The fence or wall shall not contain any poster or advertising of any kind excepting one sign of the owner, lessee, operator, or licensee of said premises on each street frontage not exceeding one-hundred (100) square feet in size. Said seven (7) foot minimum height requirement for fences shall not apply to those storage facilities which are in compliance with Section 24-107 of the City of Lafayette Code of Ordinances or any successor provisions in the City-Parish Code of Ordinances.

The City complained in its petition that, despite prior prosecution, the defendant failed to comply with the ordinance requiring sight-proof fencing and that he was storing junked vehicles on that portion of the property zoned as R-2. Further, the City asserted that the defendant improperly stored vehicles outside of the existing fence and permitted ingress and egress of the facility by individuals who would jump the curb rather than enter through a designated entrance. The City alleged that: "Such activity not only violates the Site Proof Fence Ordinance, but constitutes a nuisance subject to abatement through injunctive relief." The City continued, stating:

> The entire operation of Defendants constitutes nuisance in that it is operated in a manner which is offensive to the natural sensibilities of any reasonable person. Petitioner is entitled to a judgment enjoining Defendants from continuing any further junked car dismantling or salvage operations and commanding Defendants to cease and desist all such operations unless and until Defendants are willing to conduct operations in compliance with the provisions of the City of Lafayette Zoning Ordinance and other provisions of the City of Lafayette Code of Ordinance.

5

In May 1999, the City filed a supplemental petition, informing the court that the City Ordinance had been amended and that all those facilities affected by the ordinance were provided with a one-year period for compliance. The City stated that the defendants were provided notice of the statute and the one-year period, but that there had been no compliance with the sight-proof fencing requirement. The City alleged that: "In view of the fact that Defendants never complied with the requirements of the previously existing si[ght] proof fence ordinance, they can hardly be heard to allege that they should somehow have their facility grandfathered and not subject to the requirements of the new si[ght] proof fence ordinance."

The matter was heard in September 2002. The trial court heard from City officials regarding their course of dealing with the Fitch property and the alleged failures to comply with the ordinance. The City also presented owners of property near that of Mr. Fitch, who explained their course of dealing with the alleged violations.

Following the hearing, the trial court orally ordered that the R-2 zoned property be cleared of junked vehicles within ninety days. Failure to do so would result in the assessment of a $100 per vehicle, per day fine. Those vehicles located outside the existing fence were ordered cleared within ten days. Failure to clear those vehicles would also result in a fine. The gate on Ambassador Caffery was ordered sealed and no access permitted onto Ambassador Caffery.

Post-trial briefs were ordered on the issues raised by the defendants, namely, whether: the trial court had subject matter jurisdiction over the enforcement of the ordinance; the action had prescribed; the defendants had to comply with the 1965, 1997, or 1998 version of the Ordinance; the material used by the defendant met the

6

requirements of the applicable ordinance; and the fence required by the ordinance was to be located on the line of the R-2 property or the I-1 property.

Following the briefing period, the trial court rendered written reasons and concluded that subject matter jurisdiction existed due to the wording of the 1997 Ordinance, that the matter had not prescribed, and that the suit sought enforcement of the 1998 Ordinance. Finally, the trial court concluded that the fence as it exists is located on the line of the R-2 portion of the defendants property and that its location substantially complied with the ordinance. The issue of whether the material used by the defendant satisfied the requirements of the 1998 Ordinance was bifurcated. Following a subsequent, February 2003 hearing, the trial court concluded that the material used did not satisfy the Ordinance.

The defendants appeal, asserting the following issues in their brief to this court:

1. Whether the trial court has subject matter jurisdiction to hear all or part of this matter.

2. The application of prescription to the instant ordinance at issue.

3. The retroactivity and applicability of the amended ordinances to the instant matter (i.e., which amended version of the instant ordinance applies).

4. Whether the materials used by Defendants meets ordinance requirements.

**Discussion**

*Subject Matter Jurisdiction*

The defendants assert that the trial court lacks subject matter jurisdiction to hear the matter. They contend that it is the 1965 version of the Ordinance which is applicable. Section 14 ¼ - 5 of the 1965 Ordinance states that if a "notice to abate has not been complied with, the city may file a petition for abatement in the city court

of Lafayette to have the offending junked items declared a public nuisance and to order their abatement." The City contends that subject matter jurisdiction over the matter was vested to the district court through the wording of the 1997 Ordinance.

The trial court found as follows with regard to subject matter jurisdiction:

> This Court finds itself to be a "court of competent jurisdiction" in compliance with the requirements of the 1997 and 1998 versions of the Lafayette City-Parish Code of Ordinances. In December 1997, when the City-Parish Council Amended the Ordinance, the first proviso stated:
>
> ORDINANCE NO. O-363-97
> AN ORDINANCE OF THE LAFAYETTE CITY-PARISH COUNCIL
> RESCINDING AND REPEALING THE EXISTING CHAPTER 14- ¼
> (JUNKED PROPERTY) OF THE CODE OF ORDINANCES OF THE CITY OF LAFAYETTE,
> LOUISIANA, AND RESCINDING AND REPEALING THE
> EXISTING CHAPTERS 12.5 (JUNKED PROPERTY) AND 15 (NUISANCES) OF THE CODE
> OF ORDINANCES OF THE PARISH OF LAFAYETTE, LOUISIANA,
> AND ESTABLISHING REVISED REGULATIONS CONCERNING,
> NUISANCES, JUNKED ITEMS, AND ENCLOSURES
>
> Thus, both the old city ordinances and parish ordinances were repealed and the consolidated government came into effect, establishing jurisdiction of this matter in any "court of competent jurisdiction." Because this Court has jurisdiction over the entire Parish of Lafayette, it follows, that this Court has subject matter jurisdiction over this matter involving property located in this parish.

The defendants are correct in their assertion that the 1965 Ordinance vested jurisdiction for enforcement of that Ordinance in Lafayette City Court. However, as noted by the trial court, the 1997 Ordinance repealed the prior version along with the specific assignment of jurisdiction to the City Court of Lafayette.[3] Further, the 1997

---

[3]The subject matter jurisdiction of the City Court of Lafayette is defined by La.Code Civ.P. art. 4843 which provides, in part:

> A. Except as otherwise provided for in this Article, the civil jurisdiction of a city court is concurrent with the district court in cases where the amount in dispute, or the value of the property involved, does not exceed ten thousand dollars.
>
> B. The civil jurisdiction of a city court in which the population of the territorial jurisdiction is greater than fifty thousand is concurrent with the district court in cases or proceedings instituted by the state, a parish, a municipality, or other political subdivision of the state or injunctive relief or other civil relief for the

Ordinance refers to the filing of a petition for abatement in a "Court of competent jurisdiction[.]" *See* La.Const. art. 5, § 16.[4] Again, the 1965 Ordinance was repealed prior to the filing of the instant matter. As the trial court stated, because the district court "has jurisdiction over the entire Parish of Lafayette, it follows, that this Court has subject matter jurisdiction over this matter involving property located in this Parish." The proceedings reveal that the complaints relate to, not only past behavior that may have been violative of an Ordinance over which the city court had jurisdiction, but to ongoing, allegedly daily violations now controlled by the more recent ordinance.

Furthermore, the defendants reference *Lowenburg v. Entergy New Orleans, Inc.*, 99-1270 (La.App. 4 Cir. 5/17/00), 763 So.2d 751, *writ denied*, 00-1577 (La. 8/31/00), 766 So.2d 1279, for the proposition that enforcement of municipal ordinances and zoning regulations that reserve enforcement to a court of limited

---

cessation or abatement of any acts or practices which may violate a parish or municipal ordinance or state law. In such case, the court has jurisdiction regardless of the amount in dispute or the value of the property involved.

. . . .

G. In the City Court of Lafayette, the civil jurisdiction is concurrent with the district court in cases where the amount in dispute, or the value of the property involved, does not exceed fifteen thousand dollars.

[4]Entitled "District Courts; Jurisdiction," La.Const. art. 5, § 16 provides:

Section 16. **(A) Original Jurisdiction.** (1) Except as otherwise authorized by this constitution or except as heretofore or hereafter provided by law for administrative agency determinations in worker's compensation matters, a district court shall have original jurisdiction of all civil and criminal matters. (2) It shall have exclusive original jurisdiction of felony cases and of cases involving title to immovable property, except as provided in (3) below; the right to office or other public position; civil or political right; probate and succession matters; except for administrative agency determination provided for in (1) above, the state, a political corporation, or political subdivisions, or a succession, as a defendant; and the appointment of receivers or liquidators for corporations or partnerships. (3) The legislature may provide by law that a family court has jurisdiction of cases involving title to movable and immovable property when those cases relate to the partition of community property and the settlement of claims arising from matrimonial regimes when such action arises as a result of divorce or annulment of marriage.

jurisdiction leaves a district court with only appellate review of the lower court's determination. However, the case before the fourth circuit in *Lowenburg* is unlike that in the present case. In *Lowenburg,* the district court was found to lack subject matter jurisdiction over the issue presented as the Home Rule Charter of the City of New Orleans vested original jurisdiction over issues involving the regulation of utility rates to the City Council. Because the matter before the court was found to involve regulation of utilities, the district court was found to be without jurisdiction. In the present case, however, we have no indication of any such designation of original jurisdiction in the City Court of Lafayette. Rather, references are to concurrent jurisdiction and, in fact, the 1965 Ordinance designating City Court was repealed by the subsequent Ordinance. We find no error in the trial court's determination regarding subject matter jurisdiction.

*Prescription*

The defendants contend that the trial court erred in failing to find that the action for abatement had not prescribed. They contend that by operation of liberative prescription, the instant cause of action has prescribed. They point to La.R.S. 9:5625[5]

---

[5]La.R.S. 9:5625, entitled "Violation of zoning restriction, building restriction, or subdivision regulation" presently provides:

> A. (1) All actions civil or criminal, created by statute, ordinance, or otherwise, except those actions created for the purpose of amortization of nonconforming signs and billboards enacted in conformity with the provisions of R.S. 33:4722, which may be brought by parishes, municipalities, or their instrumentalities or by any person, firm, or corporation to require enforcement of and compliance with any zoning restriction, building restriction, or subdivision regulation, imposed by any parish, municipality, or an instrumentality thereof, and based upon the violation by any person, firm, or corporation of such restriction or regulation, *must be brought within five years from the first act constituting the commission of the violation.*
>
> (2) Where a violation has existed for a period of two years prior to August 1, 1956, except those actions created for the purpose of amortization of nonconforming signs and billboards enacted in conformity with the provisions of R.S. 33:4722, the action must be brought within one year from and after August 1, 1956.

for the proposition that enforcement of the longstanding condition of the fence has prescribed. Referencing the statute, the defendants assert that any cause of action prescribed before the enactment of the 1997 statute as evidence indicates that the City was aware of the condition of the fence by 1994, but did not file suit until 1998.

In denying the exception of prescription, the trial court found:

> This Court finds that this action is not prescribed. Defendants have repeatedly and continuously assured both the City and Lafayette City - Parish Consolidated Government that they would comply with the requirements of the ordinances. Negotiations started in 1995 as to the type of fence to be constructed, and although construction began as early as 1995, the fence has never been fully completed from a standpoint of total enclosure or sight proof requirements as per the ordinance. Pictures taken of the yard at the time of trial show that portions of the fence are still not secured leaving the yard in full public view. Due to the continuing nature of the violations, this Court hereby denies the exception of prescription.

It is correct that the evidence reveals the City's longstanding knowledge of the condition of the fence. The record contains citizen complaints, indication of criminal prosecutions, and substantial evidence of the City's continued negotiations with Mr. Fitch regarding compliance with the Ordinances. Although there is evidence of knowledge of past violations, the suit alleges ongoing, daily violations. While the early conduct from 1994 and 1995 may be relevant to the factual background of the City's case, the current violations are the City's focus. The question of whether a

(3) With reference to violations of use regulations all such actions, civil or criminal, except those actions created for the purpose of amortization of nonconforming signs and billboards in conformity with the provisions of R.S. 33:4722, must be brought within five years from the date the parish, municipality, and the properly authorized instrumentality or agency thereof if such agency has been designated, first had been actually notified in writing of such violation.

(4) Except as relates to nonconforming signs and billboards, any prescription heretofore accrued by the passage of two years shall not be interrupted, disturbed, or lost by operation of the provisions of this Section.

(Emphasis added.)

11

petition could be maintained for early violations is not before the court. Rather, the record supports the view that the City is alleging ongoing, daily infractions under the current ordinance. In short, the defendants cannot be grandfathered into a regulation that did not exist at the time they allege the City was ignoring their violation. The present ordinance requires a specific, wind resistant type of material. The defendants' contention that they should benefit from a grandfather clause due to violations of an older ordinance that did not contain a requirement this stringent is without merit.

*Retroactivity*

The defendants next contend that the City's practice of passing ever more onerous Ordinances after business was begun in 1993, has deprived them of due process rights. They contend that "the only applicable zoning restrictions and ordinance applicable to the instant litigation, the violation of which is categorically denied, are those which were in effect at the time Appellee issued to Appellants their business license and up to two years thence, that is the City of Lafayette, Ordinance effective May 15, 1965 to November 20, 1997."

The defendants point to La.Civ.Code art. 6, which provides: "In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." In *Walls v. American Optical Corp.*, 98-455, p. 5-6 (La. 9/8/99), 740 So.2d 1262, 1267, the Louisiana Supreme Court considered whether a statute had retroactive application, inquiring as to whether the statute "either (1) evaluates the conditions of the legality of a past act, or (2) modifies or suppresses the effects of a right already acquired." The supreme court found that if neither of the consequences were produced, the statute operates prospectively, and

12

bars a cause of action that arose after the statute's effective date. *Id.* Quoting United States Supreme Court jurisprudence, the supreme court further explained: "A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law. Rather the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Id*. at 1266, *quoting Landgraf v. USI Film Products*, 511 U.S. 244, 269-70, 114 S.Ct. 1483, 1499 (1994)(citations omitted)(footnote omitted).

Addressing the issue of retroactivity, the trial court found:

Defendants argue that any attempt to apply the amended ordinances to them is an attempt to retroactively apply the law. However, this Court is impressed by the plaintiff's argument that defendants are not being prosecuted for having violated the 1998 ordinance provisions prior to 1998. Rather, they are being pursued for failing to construct a fence in compliance with the new ordinance after the phase-in period elapsed and that all persons in the junk storage business were given the same phase-in period and are subject to the same fence requirements.

This Court finds defendants to be subject to the requirements of the 1998 Ordinance and hereby orders the parties to set for hearing a determination as to whether the materials used by defendants in constructing the fence comply with those requirements.

This view is supported by the record.

Although the City presented evidence regarding failure to comply with the 1965 Ordinance, that in effect at the time the defendants commenced business, and failure to comply with a variance approved by the City, the enforcement action relates to ongoing, daily violations. While the defendants' past conduct may be relevant to the trier of fact, it is clear that the City is alleging ongoing violations and seeking remedy under the current ordinance.

13

*Compliance*

Returning to the argument that the 1965 Ordinance is the provision applicable to their business, the defendants assert in their brief "that the evidence and testimony adduced at trial proves that Appellants have installed around the totality of their premises a substantial, safe, sight proof fence, albeit not to the arbitrary and subjective liking of Appellee's interpretation of its ordinance, which ever one it is now seeking to enforce." They contend that they have "continuously maintained, albeit with regular maintenance" a fence made of treated telephone poles, high strength wire and dark, opaque material.

Following presentation of the evidence regarding the suitability of the material used by the defendants, the trial court found that it did not comply with the statute, that it lacks adequate UV protection for long-term durability and offers insufficient wind resistance for compliance with the statute. The trial court briefly recounted the history of the March 1995 letter ordering the defendant to comply with the fencing requirement and further explained:

> Mr. Fitch then began negotiations with the City for the construction of a fence and requested approval of a black fabric to be used as covering on the fence. This fabric was approved by the City; however, Mr. Fitch used a different but similar fabric to complete the fence. According to a memo prepared by the City of Lafayette, Mr. Fitch had purchased all the grid work by May 30, 1995 and had begun construction of the fence. Mr. Fitch testified at trial that construction and maintenance of the fence has been ongoing and continuous since that time. Despite these efforts, the sight proof fence has not been properly maintained and there are many areas left uncovered by the black material, exposing the yard to full public view.

The record fully supports these factual findings. Testimony presented indicates that the fabric used by the defendants was, not only, different from that which was approved by the City prior to the 1997 Ordinance, but that when installed, it was

14

inadequate. Testimony indicates that the fabric would often become unattached and would blow from the fencing frame. The owner of property adjacent to that of the defendants explained that he had filed inquiries with the City regarding the state of the fence. He also stated that there has not been a time when a sight-proof fence surrounded the entirety of the facility. The testimony in the record supports the view that this condition existed at the time of trial. The trial court's factual findings in this regard are not manifestly erroneous.

*Post-Trial Proceedings*

In their final assignment of error, the defendants question the trial court's determination to bifurcate the issues and hold an additional hearing following the September 2002 trial. It was at the subsequent trial that the trial court heard evidence related to the issue of whether the material used by the defendants was adequate under the ordinance. The defendants argue that this opportunity provided the City with an additional opportunity to prove its case.

The defendants' objection regarding the opening of evidence was presented to the trial court at the time of the February 2003 hearing. The trial court explained that it had bifurcated the issue of the suitability of the material stating:

> And bifurcated the issue of whether the material - - because in my ruling the issue initially, while we didn't have an issue with regard to the material at the first trial, was because we were to determine which ordinance it was. So how could we have had a trial or evidence with regards to material that we didn't know which material was to apply? Will [sic], I think that's what I said at the first hearing, that I would not allow that testimony to come until I made that decision.

This explanation by the trial court is reflected in the proceedings at the September 2002 trial after which the trial court ordered briefs regarding the exceptions raised by the defendants and the issue of which Ordinance was at issue. The trial court's

determination to not accept evidence regarding the sufficiency of the material was dependant on that initial determination. Furthermore, with regard to the defendants' assertion that the trial court should have granted a directed verdict in their favor after the original hearing, that argument is without merit given the consistency of the City's witnesses' testimony regarding the state of the fence around the property. This assignment lacks merit.

## DECREE

For the foregoing reasons, the decision of the trial court is affirmed. All costs of these proceedings are assigned to the defendants, Kevin Fitch and Bayou Land Investments, Inc.

**AFFIRMED.**

16