# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 05-201

**LAFAYETTE CITY PARISH CONSOLIDATED GOVERNMENT**

**VERSUS**

**DIEN'S AUTO SALVAGE, INC., ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2003-0507
HONORABLE JOHN DAMIAN TRAHAN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**John Alfred Mouton, III**
**P. O. Box 3244**
**Lafayette, LA 70502**
**Telephone: (337) 233-1199**
**COUNSEL FOR:**
    **Plaintiff/Appellee - Lafayette City Parish Consolidated Government**

**Kaliste Joseph Saloom, III**
**Saloom & Saloom**
**Post Office Drawer 2999**
**Lafayette, LA 70502-2999**
**Telephone: (337) 234-0111**
**COUNSEL FOR:**
**Defendants/Appellants - Dien Duc Huynh, Dien's Auto Salvage, Inc., and**
    **Tuyetnga Thi Vo**

THIBODEAUX, Chief Judge.

The Lafayette City-Parish Consolidated Government brought an enforcement action against Defendants, Dien's Auto Salvage Inc., Dien Duc Huynh, and Tuyetnga Thi Vo, for violating 1997 and 1998 City-Parish ordinances requiring Defendants to fully fence their salvage yard which had been in operation since 1989. Defendants had not complied with previous ordinances requiring lesser fencing and filed an exception of prescription. The trial court ordered enforcement. Defendants appealed. We find that the enforcement action of the City-Parish is not prescribed for the reasons set forth below. We affirm.

I.

## ISSUE

We must decide whether the trial court erred in denying Defendants' exception of prescription.

II.

## FACTS

Defendants own and operate an auto salvage yard at 6157-C Johnston Street in Lafayette, Louisiana. The business opened in 1989. The Lafayette City Ordinance, Chapter 14 ¼, enacted in 1965 and amended in 1977, had declared land with junked items a public nuisance and required such property to be enclosed on all boundary lines with a non-transparent fence or wall, seven to ten feet high. Chain link fences were specifically allowed, as long as they contained appropriate slats in the wire mesh to make the fencing non-transparent. Defendants' business was not fenced and not in compliance.

In 1996, the city and parish created a consolidated form of government, and in 1997 the Lafayette City-Parish Council adopted Ordinance O-363-97. This ordinance repealed, rescinded, and replaced Lafayette City Ordinance, Chapter 14¼ (Junked Property) and Lafayette Parish Ordinance, Chapters 12.5 (Junked Property) and 15 (Nuisances) and rewrote portions of the existing codes for the City-Parish.

Ordinance O-363-97 again declared the presence of junked vehicles to be a public nuisance and required that such property be fully enclosed by a seven to ten foot fence, uniform in height and color, of solid and rigid construction, and in the color beige, brown, black, dark green, or gray. The fence was required to be constructed in such a manner and with such materials that rendered it capable of resisting winds of 50 miles per hour. Certain facilities that were already in compliance with other pre-existing ordinances were exempt from the seven-foot height requirement. This ordinance was written into law on December 1, 1997 and carried a one-year phase-in provision that made the ordinance effective on December 1, 1998. Additionally, the ordinance contained a provision stating that each day and each act in violation of the ordinance would constitute a separate offense.

In 1998, Ordinance O-107-98 amended Ordinance O-363-97 to provide a more stringent fencing requirement than any of its predecessors, increasing the wind resistance requirement such that the fence must be able to sustain 100 mile per hour winds. Again, certain facilities already in compliance with pre-existing ordinances were exempt from the height requirement. All other provisions of O-363-97, not in conflict or specifically changed, were to remain in full force and effect. This included the one-year phase-in provision. Ordinance O-107-98 was written into law on April 23, 1998, and therefore became effective on April 23, 1999.[1]

---

[1] The City-Parish brief states the compliance date for Ordinance O-107-98 as April 28, 1999. However, the copy of the Ordinance attached as an exhibit in the record indicates that the City-Parish Council President signed the approval statement on April 23. In the present case, the five day

On April 24, 1998, Lafayette Consolidated Government, Environmental Quality Division, sent Defendants an "informational notice" of Ordinance O-363-97, included the language of the amended version with the new wind resistance requirement, and gave them notice of an effective date of December 1, 1998 for compliance.[2] The notice informed Defendants that "Each act, or each day in violation of any provision hereof shall be deemed a separate offense." Defendants did not comply.

Again on May 4, 1999, the City-Parish notified Defendants that an April 29, 1999 inspection revealed that they were in violation of the ordinance. The City-Parish again provided Defendants with the precise language of the ordinance and the specific requirements for the fence enclosure, and gave Defendants thirty days from the date of the notice to comply. Defendants did not comply.

On August 31, 1999, the law offices of John Mouton sent Defendants a formal demand requiring them to comply with the fence requirements within thirty days. Defendants did not comply.

On November 19, 2002, the Lafayette Consolidated Government, Director of Public Works, sent Defendants a formal notice enclosing a copy of the Ordinance, codified in The Lafayette City-Parish Code of Ordinances at Division 2, Section 34-53, which again contained the precise requirements for constructing the fence. This notice gave Defendants thirty days to comply with the Ordinance in order

difference does not affect our decision, and we are not required to reconcile the discrepancy.

[2]It appears that this April 1998 notice to Defendants went out the day after the 1998 amendment was signed into law. The notice referenced the 1997 ordinance but used the updated language from the 1998 amendment. Therefore, it seems that the compliance/effective date given to Defendants should have been one year from the new 1998 amendment, but instead provided a December 1998 compliance date for the December 1997 amendment. The correct compliance/effective date of the April 1998 amendment, pursuant to the one-year phase-in provision, would have been April 1999. However, this error in the notice is of no moment because there were several subsequent notices with additional grace periods further extending the date for compliance.

to avoid legal proceedings. Therefore, the last compliance date given to Defendants was December 19, 2002. Defendants did not comply.

On January 29, 2003, Lafayette City-Parish Consolidated Government filed its Petition for Injunctive Relief and for Abatement of a Nuisance. Defendants answered the suit and filed exceptions of prescription and no right of action.[3]

The trial court denied Defendants' exception of prescription and ordered Defendants to construct the fence according to Ordinance O-363-97, as amended by Ordinance O-107-98.

III.

## LAW AND DISCUSSION

### *Standard of Review*

An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A two tiered test must be applied in order to reverse the findings of the trial court:

(1)  the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court; and,

(2)  the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

*Mart v. Hill*, 505 So.2d 1120 (La.1987).

Even where the appellate court believes its inferences are more reasonable than the fact finder's, reasonable determinations and inferences of fact should not be disturbed on appeal. *Arceneaux v. Domingue*, 365 So.2d 1330

---

[3]Defendants' Exception of No Right of Action was not addressed on appeal and appears abandoned.

(La.1978). Additionally, a reviewing court must keep in mind that if a trial court's findings are reasonable based upon the entire record and evidence, an appellate court may not reverse said findings even if it is convinced that had it been sitting as trier of fact it would have weighed that evidence differently. *Housely v. Cerise*, 579 So.2d 973 (La.1991). The basis for this principle of review is grounded not only upon the better capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts.

### *Exception of Prescription*

Defendants contend that the trial court erred in denying their exception of prescription because the trial court failed to properly apply La.R.S. 9:5625, which Defendants assert provides the City-Parish a prescriptive period of "either two or five years from the date it receives written notice of violation of an ordinance. . . ." More specifically, La.R.S. 9:5625 provides in pertinent part as follows:

> Violation of zoning restriction, building restriction, or subdivision regulation
>
> A. (1) All actions civil or criminal, created by statute, ordinance, or otherwise, except those actions created for the purpose of amortization of nonconforming signs and billboards enacted in conformity with the provisions of R.S. 33:4722, which may be brought by parishes, municipalities, or their instrumentalities or by any person, firm, or corporation to require enforcement of and compliance with any zoning restriction, building restriction, or subdivision regulation, imposed by any parish, municipality, or an instrumentality thereof, and based upon the violation by any person, firm, or corporation of such restriction or regulation, must be brought within five years from the first act constituting the commission of the violation.
>
> . . . .
>
> (3) With reference to violations of use regulations all such actions, civil or criminal, except those actions created for the purpose of amortization of nonconforming signs and billboards in conformity with the provisions of R.S.

5

33:4722, must be brought within five years from the date the parish, municipality, and the properly authorized instrumentality or agency thereof if such agency has been designated, first had been actually notified in writing of such violation.

(4) Except as relates to nonconforming signs and billboards, any prescription heretofore accrued by the passage of two years shall not be interrupted, disturbed, or lost by operation of the provisions of this Section.

In seeking to apply a two-year prescriptive period, pursuant to subsection (4) above, Defendants assert that "the action for abatement has prescribed because Defendants' business operated in violation of the fencing ordinance for a period greater than two years without any action to seek enforcement by the City-Parish."

More specifically, Defendants maintain that La.R.S. 9:5625 had only a two-year prescriptive period prior to its amendment in 1997 and that section (4) of the amended version above still applies the two-year prescriptive period in their case. Defendants further argue that Ordinances O-363-97 and O-107-98 are not new ordinances, but are merely amendments to the "1965 Ordinance," and that the trial court erred in holding "that the City-Parish could enforce the 1965 Ordinance as amended."

In contending that they were subject to the "1965 Ordinance" when they began operations in 1989, Defendants intimate by reference that prescription had run by 1991, or within two years of the date that the City-Parish had written notice of the violation.[4] Thus, they argue that the abatement cause of action had already prescribed

---

[4]The City-Parish does not argue the applicability of the written notice requirement to the City-Parish, pursuant to La.R.S. 9:5625 A(3), except to mention it, and to say that they are not seeking closure of Defendants' facility as a nonconforming use. In that regard, there is no evidence that the City-Parish had written notice of the violation until their April 29, 1999 inspection. The City-Parish had sent Defendants an informational letter in April 1998 informing them of the new Ordinances and advising them that they must get in compliance by December 1, 1998. The second letter to Defendants on May 4, 1999 referenced the April 29, 1999 inspection, and appears to be a formal citation giving rise to the presumption that the City-Parish had received written notice of the violation on April 29, 1999. *See Parish of Jefferson v. Jacobs,* 623 So.2d 1371 (La.App. 5 Cir. 1993). The court notes that the April 29, 1999 notice date renders a prescription date of April 29, 2004. However, we need not speculate about a written notice date that is not argued, where we find

before the establishment of the five-year prescriptive period in the 1997 amendment to La.R.S. 9:5625, and that prescription therefore could not be interrupted pursuant to subsection (4) above. We disagree.

Defendants completely ignore the fact that the city and parish ordinances in effect when they began operating their salvage yard in 1989[5] were repealed and rescinded by the new Lafayette Consolidated Government which created the new 1997 and 1998 City-Parish ordinances. In fact, the title and second paragraph of O-363-97 clearly state that the new ordinance rescinds and repeals the previous city and parish ordinances, and other language states that the new ordinances supercede and replace the prior ordinances.

More specifically, Ordinance O-363-97 provides in pertinent part as follows:

ORDINANCE NO. 0-363-97

AN ORDINANCE OF THE LAFAYETTE CITY-PARISH COUNCIL RESCINDING AND REPEALING THE EXISTING CHAPTER 14¼ (JUNKED PROPERTY) OF THE CODE OF ORDINANCES OF THE CITY OF LAFAYETTE, LOUISIANA, AND *RESCINDING AND REPEALING THE EXISTING CHAPTERS 12.5* (JUNKED PROPERTY) AND 15 (NUISANCES) OF THE CODE OF ORDINANCES OF THE PARISH OF LAFAYETTE, LOUISIANA, AND ESTABLISHING REVISED REGULATIONS CONCERNING, NUISANCES, JUNKED ITEMS, AND ENCLOSURES

BE IT ORDAINED by the Lafayette City-Parish Council that:

---

that the action is not prescribed under the known dates and under the ongoing violations provision.

[5]Defendants also argue that they were located outside the City limits of Lafayette at the time they began operations, yet they attach only the *City* Ordinance 14¼ and argue that it is this 1965 Ordinance that governs herein. Neither party attached the *Parish* Ordinance Chapters 12.5 and 15. However, it is of no moment because both City and Parish Ordinances were repealed and rescinded when the City and Parish consolidated and enacted O-363-97 and O-107-98, which are the governing Ordinances in this case.

SECTION 1: The Lafayette City-Parish Consolidated Council believes that a reasonable exercise of the police power of the Lafayette Consolidated Government should address issues of public safety, protection of economic values to properties and, in general, the maintenance of public peace and good order, safety, health, moral or general welfare. The Lafayette City-Parish Consolidated Council believes that an ordinance is necessary to establish revised regulations concerning nuisances, junked items and enclosures in order to promote the public interest in these areas and to impose reasonable and nondiscriminatory regulations concerning these subject matters. These revised regulations are intended to be a reasonable regulation of nuisances, junked items and enclosures which regulations will effectuate the public safety and protection of economic values to properties within the City and Parish of Lafayette, Louisiana.

SECTION 2: The existing Code of Ordinances of the City of Lafayette, Louisiana, Chapter 14¼ (Junked Property) and the existing Code of Ordinances of the Parish of Lafayette, Chapters 12.5 (Junked Property) and 15 (Nuisances), are *hereby rescinded and repealed and are replaced with the following provisions*.

## ARTICLE I - DEFINITIONS

Chapter 14¼. Nuisances, Junked Items, and Enclosures

Sec. 14¼. Definition.

. . . .

## ARTICLE IV - ENCLOSURES

Sec. 14¼-15. Enclosure Required.

No person, firm, or corporation shall store or offer for sale any recyclable items, paper, iron or steel junk, rags or wreckage of motor-driven vehicles or automobiles or trucks, including parts and accessories thereof, and no person, firm, or corporation shall wreck or dismantle said items for commercial purpose on any open lot or parcel of ground that is not properly enclosed on all boundary lines, except where prohibited by any law or regulation, which enclosure shall be by a substantial fence not less than seven (7) feet nor more than ten (10) feet high and properly screening said enclosed area from public view. In such instances where a law or regulation prohibits the complete enclosure on all boundary lines, there shall be substantial compliance by making as much enclosure as possible of the

lot or parcel of ground, except as prohibited by any law or regulation. Any decision as to whether or not the enclosure substantially complies shall be made by the Director of Public Works and/or his designee. The fence shall be uniform in color and in height with all material, including posts and fencing, being of uniform height, color and construction. Said fence shall be wind resistant and able to withstand fifty (50) mile per hour winds, constructed of a solid rigid material, and completely non-transparent and of uniform color. The uniform color shall be any shade of beige, brown, black, dark green or gray. The color shall be approved by the Director of Public Works or his designee prior to installation of the enclosure. Such areas or parcels of land, or premises, shall be enclosed with the aforedescribed solid, non-transparent wall or fence. The fence or wall shall not contain any poster or advertising of any kind excepting one sign of the owner, lessee, operator, or licensee of said premises on each street frontage not exceeding one hundred (100) square feet in size. Said seven-foot minimum height requirement for fences shall not apply to those storage facilities which are in compliance with Section 24-107 of the City of Lafayette Code of Ordinances or any successor provisions in the City-Parish Code of Ordinances.

. . . .

Sec. 14¼-23. Phase-In Period.

The requirements set forth in Article IV--Enclosures, including but not limited to the necessity for a substantial fence set forth in Sec. 14 ¼-15 shall not become effective until one (1) year after the effective date of this Ordinance. During such period of time, the Director of Public Works or his designee shall inform all parties to be affected by the requirements of this Ordinance and this one (1) year period shall enable and allow such parties a sufficient time to comply with the provisions of Article IV--Enclosures and the required fencing.

Sec. 14¼-24. Variance.

Any variance or exception to any provision of this ordinance must be approved by the vote of the Lafayette City-Parish Council.

(Emphasis added.)

Ordinance O-363-97 was signed into law on December 1, 1997. Because

of the one-year phase-in period, it became effective on December 1, 1998. Therefore,

the first act or first day of non-compliance under the 1997 ordinance would have been December 1, 1998. Accordingly, pursuant to the "first act" language in prescription article La.R.S. 9:5625 A(1), the City-Parish would have had five years from December 1, 1998, or until December 1, 2003, to bring suit against Defendants for failing to build the required fence enclosure. In this case, the City-Parish filed civil proceedings on January 29, 2003, ten months before the action would have prescribed on December 1, 2003. However, our analysis does not end here.

On April 23, 1998, by Ordinance 0-107-98, the Lafayette City-Parish Council changed the 1997 enclosure provision, requiring that the fence enclosure around junked items be constructed to withstand winds of one hundred miles per hour rather than fifty miles per hour. Ordinance O-107-98, reads as follows:

> SECTION 5: Section 14¼-15. Enclosure Required shall be amended such that it shall hereinafter read as follows.
>
> Section 14¼-15. Enclosure Required.
>
> No person, firm, or corporation shall store or offer for sale, commercially and/or for profit, any recyclable items, paper, iron and steel junk, rags or wreckage of motor-driven vehicles or automobiles or trucks, including parts and accessories thereof, and no person, firm, or corporation shall wreck or dismantle said items for commercial and/or for profit purposes on any open lot or parcel of ground that is not properly enclosed on all boundary lines, except where prohibited by law or regulation, which enclosure shall be by a substantial fence not less than seven (7) feet nor more than ten (10) feet high and properly screening said enclosed area from public view. In such instances where a law or regulation prohibits the complete enclosure on all boundary lines, there shall be substantial compliance by making as much enclosure as possible of the lot or parcel of ground, except as prohibited by any law or regulation. Any decision as to whether or not the enclosure substantially complies shall be made by the Director of Public Works and/or his designee. The fence shall be uniform in color and in height with all material, including posts and fencing, being of uniform height, color and construction. Said fence shall be wind resistant and able to withstand one-hundred (100) mile per hour winds, constructed of a solid rigid material, and completely

non-transparent and of uniform color. The uniform color shall be any shade of beige, brown, black, dark green or gray. The color shall be approved by the Director of Public Works or his designee prior to installation of the enclosures. Such areas or parcels of land, or premises, shall be enclosed with the aforesaid solid, non-transparent wall or fence. The fence or wall shall not contain any poster or advertising of any kind excepting one sign of the owner, lessee, operator, or licensee of said premises on each street frontage not exceeding one-hundred (100) square feet in size. Said seven (7) foot minimum height requirement for fences shall not apply to those storage facilities which are in compliance with Section 24-107 of the City of Lafayette Code of Ordinances or any successor provisions in the City-Parish Code of Ordinances.

Section 6: All of the other provisions of Ordinance O-363-97 are to remain in full force and effect.

Accordingly, the new provisions of O-107-98, which were signed into law on April 23, 1998, became effective on April 23, 1999 under the one-year phase-in provision. If Defendants had already been in compliance with the 1997 Ordinance, they would likely have been able to seek an exemption or variance on the new requirements of the 1998 Ordinance. However, they had not complied, and the new ordinance essentially re-started the five-year prescriptive period of La.R.S. 9:5625, giving the City-Parish until April 23, 2004 to file their abatement action. Moreover, as shown in the factual section of this opinion, the City-Parish sent the Defendants four notices between April 1998 and November 2002, three of which provided thirty-day extensions or grace periods, thereby arguably extending the prescriptive periods beyond the phase-in dates of the ordinances themselves.

The last notice sent on November 19, 2002, gave Defendants thirty days, or until December 19, 2002 to meet the compliance requirements of the new ordinance, O-107-98. Under the circumstances herein, where there had been no substantial compliance at any time, it is plausible that the City-Parish then had five years from December 19, 2002, that is until December 19, 2007, to bring suit. It

11

certainly seems unfair to allow the Defendants to benefit by extensions and grace periods, and then to penalize the City-Parish which gave the grace period, because it did not sue soon enough. However, it is not necessary for us to reach the issue of whether the voluntary extensions of the City-Parish serve to extend the prescriptive period, because the action did not prescribe under Ordinance O-363-97 even before the 1998 Amendment provided a new compliance date in April 1999, and, importantly, because Defendants' violations have been ongoing.

The penalty section of O-363-97, and of O-107-98 by incorporation, at Article VI, Section 14¼-26, provides for violations of the chapter to be punishable as a misdemeanor by fine or by a period of imprisonment, or both. It states that "Each act in violation of any of the provisions hereof shall be deemed a separate offense. Each day of violation shall constitute a separate offense." Section 14¼-27 instructed that, "The prosecution of any such misdemeanor shall be tried in any Court of competent jurisdiction." Accordingly, because the new Ordinances enacted by the Lafayette Consolidated Government in 1997 and 1998 provide that ongoing daily violations shall constitute new offenses, prescription essentially begins anew with each day a violation continues. While this language initially seems to be in conflict with the "first act" requirement of prescription article La.R.S. 9:5625, an example may help to clarify that there is no conflict.

For example, if Defendants had constructed a fence enclosure in substantial compliance with O-363-97, sometime after the effective date of December 1, 1998, but painted it red, the City Parish could not wait five years and a day to bring an action for abatement based upon the color of the fence being out of compliance. The City-Parish would have to bring their action to remedy the problem within the five-year prescriptive period of La.R.S. 9:5625, or by December 1, 2003. However, where the Defendants did not construct a fence enclosure or argue that they came any

12

where near substantial compliance with the 1997 or 1998 Ordinance, every day that Defendants do not build a fence is a new and separate violation of the fence enclosure provisions. Essentially, prescription begins anew with regard to the non-existent fence enclosure.

In a very similar case involving another auto salvage yard in Lafayette, *Lafayette City-Parish Consolidated Government v. Fitch*, 03-377 (La.App. 3 Cir. 10/01/03), 856 So.2d 1276, *writ denied in part and granted in part,* 03-3352 (La. 3/19/04), 869 So.2d 783 (writ of certiorari granted in part and remanded to the trial court for the sole purpose of setting a new date for compliance by defendants), the same 1965, 1997, and 1998 ordinances were at issue.

The defendant salvage yard in *Fitch* ostensibly began operations in 1993 and subsequently in 1995 obtained approval for a fence of a certain fabric, pursuant to the 1965 Ordinance that was in effect at that time. However, a different fabric was used which tore and blew away, and the fence never fully enclosed the salvage yard. The City-Parish negotiated with the defendants from 1995 to 1998 and finally sued for injunctive relief. As in the present case, the defendants in *Fitch* argued that the 1965 ordinance should apply, that under the liberative prescription of La.R.S. 9:5625, the action had a two-year prescription period, and that it had prescribed before the enactment of the 1997 Ordinance.

In *Fitch*, in May of 1999, the City-Parish filed a supplemental petition informing the court that the new 1997 Ordinance had been amended and all facilities had been given a year to comply, but there had been no compliance with the sight-proof fencing requirement by the defendants therein. The City-Parish alleged that: "In view of the fact that Defendants never complied with the requirements of the previously existing si[ght] proof fence ordinance, they can hardly be heard to allege

that they should somehow have their facility grandfathered and not subject to the requirements of the new si[ght] proof fence ordinance." *Fitch,* 856 So.2d at 1280.

The trial court in *Fitch* found that even though construction had begun in 1995, the defendants' fence had never been fully completed, never fully enclosed the salvage yard, and never sight-proofed pursuant to the ordinance. At the time of trial, pictures indicated that the yard was still in public view. The trial court held that "Due to the continuing nature of the violations, this Court hereby denies the exception of prescription." *Id*. at 1284.

In affirming the denial of prescription, this court in *Fitch* stated the following:

> It is correct that the evidence reveals the City's longstanding knowledge of the condition of the fence. The record contains citizen complaints, indication of criminal prosecutions, and substantial evidence of the City's continued negotiations with Mr. Fitch regarding compliance with the Ordinances. Although there is evidence of knowledge of past violations, the suit alleges ongoing, daily violations. While the early conduct from 1994 and 1995 may be relevant to the factual background of the City's case, *the current violations are the City's focus.* The question of whether a petition could be maintained for early violations is not before the court. Rather, *the record supports the view that the City is alleging ongoing, daily infractions under the current ordinance. . . .* The present ordinance requires a specific, wind resistant type of material. The defendants' contention that they should benefit from a grandfather clause due to violations of an older ordinance that did not contain a requirement this stringent is without merit.

*Id.* (emphasis added).

The panel of this Court in *Fitch* also applied the requirements of the 1998 ordinance in the retroactivity issue urged therein and repeated its finding that the City's enforcement action related to ongoing daily violations. Likewise, in *Fitch*, where the defendants argued that the 1965 Ordinance bestowed subject matter jurisdiction only upon the City Court, this court upheld the district trial court's

14

finding that it was a court of "competent jurisdiction" pursuant to the requirements of the 1997 and 1998 Ordinances and therefore had jurisdiction to hear the matter. *Fitch,* 856 So.2d at 1282. Repeatedly throughout the opinion in *Fitch*, this court stated that the 1965 ordinance had been repealed, and we upheld the application of the 1998 ordinance with regard to ongoing daily violations of the defendants therein.

In the present case, Defendants argued that they had constructed a portion of a fence, but complained that the City-Parish had changed the height requirement, and Defendants constructed another higher portion. However, the photographs in the record, which were examined at trial, reveal only a small portion of a fence with the majority of the yard and junked items exposed to public view and public access. The evidence adduced at trial, and even Defendants' own arguments on appeal, demonstrate that Defendants never complied with the notices they were sent, and there was no evidence that they ever asked for an exemption or a variance because of existing construction. Unlike the defendants in *Fitch*, Defendants herein have provided no evidence of ongoing efforts to comply.

In fact, Defendants do not argue that they once complied and should be allowed to maintain an existing fence that once met a pre-existing ordinance. Rather, they boldly assert that they never complied with any ordinance. At the trial, Defendants even attempted to argue, in spite of the specificity of the kind of fence required, that the tree line at the edge of the salvage yard provided a suitable "fence" on some boundary lines. The arguments of Defendants throughout the record on appeal are void of any merit whatsoever. The City-Parish has asked for damages for Defendants' filing of a frivolous appeal herein, in light of *Fitch,* which, as noted above, has already decided the essential elements of this case. Moreover, the counsel for the defendants in *Fitch* is the same defense counsel herein. Accordingly, we hereby award damages for frivolous appeal in the amount of $1,500.00.

We conclude that the abatement action of the City-Parish has not prescribed, that the governing ordinance in bringing the Defendants into compliance is O-107-98, and that the ongoing violations provision of the ordinance is applicable herein. Where the governing ordinance, O-107-98, has a compliance date of April 23, 1999, the City-Parish filed suit on January 29, 2003, over a year before April 23, 2004, which would constitute the five-year prescription date under La.R.S. 9:5625, if Defendants had substantially complied with the ordinance by building a fence enclosure of some description. However, since there was never substantial compliance, under the ongoing violation provision of O-107-98, each day of violation constitutes a separate offense, and therefore prescription begins anew with each day and each act of noncompliance.

IV.

## CONCLUSION

For the above reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to Defendants. We award the sum of $1,500.00 in damages for a frivolous appeal.

**AFFIRMED.**

16