# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-272


CYNTHIA ANNE COLE

VERSUS

SABINE BANCSHARES, INC.



\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 67,189
HONORABLE STEPHEN B. BEASLEY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## PHYLLIS M. KEATY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Billy Howard Ezell, and Phyllis M. Keaty, Judges.


**AFFIRMED.**

**Jacques F. Bezou, Sr.**
**Stacy R. Palowsky**
**Matthew L. Devereaux**
**The Bezou Law Firm**
**534 East Boston Street**
**Covington, Louisiana  70433**
**(985) 892-2111**
**Counsel for Plaintiff/Appellant:**
  **Cynthia Anne Cole**

**David S. Rubin**
**Julie M. McCall**
**George P. Holmes**
**Kantrow, Spaht, Weaver & Blitzer**
**Post Office Box 2997**
**Baton Rouge, Louisiana  70821-2997**
**(225) 383-4703**
**Counsel for Defendant/Appellee:**
  **Sabine Bancshares, Inc.**

**John L. Whitehead**
**Attorney at Law**
**Post Office Box 1127**
**Natchitoches, Louisiana  71458-1127**
**Counsel for Defendant/Appellee:**
  **Sabine Bancshares, Inc.**

**KEATY, Judge.**

Plaintiff/Appellant, Cynthia Anne Cole, appeals the trial court's judgment granting a Peremptory Exception of No Cause of Action in favor of Defendant/Appellee, Sabine Bancshares, Inc. (SBI). For the following reasons, the trial court's judgment is affirmed.

## FACTS AND PROCEDURAL HISTORY

This matter arises out of Cynthia's disagreement with her brother, James Robert Cole, Jr. (Jim), over shares of bank stock they inherited from their deceased father, James Robert Cole, Sr. (James). James was the owner, CEO, and majority stockholder of SBI. SBI is a holding company which holds 100% of the stock of Sabine State Bank and Trust Company (SSBTC). Prior to James's death, Cynthia owned 1,406 shares of SBI stock. Upon James's death, Cynthia inherited 3,020.5 shares of his stock, making her an owner of approximately 44% of SBI stock. Litigation subsequently ensued between Cynthia and Jim regarding their father's succession and division of the stock. *See Succession of Cole*, 12-802 (La.App. 3 Cir. 12/26/12), 108 So.3d 240, *writ denied*, 13-257 (La. 3/15/13), 109 So.3d 384.

On January 7, 2016, Cynthia filed a Petition for Purchase of Shares against SBI, alleging that she was an oppressed shareholder under La.R.S. 12:1-1435 ("oppressed shareholder statute"). Cynthia sought to have SBI purchase her shares of stock at fair value as defined in the statute. On February 26, 2016, SBI filed a Peremptory Exception of No Cause of Action, arguing that the actions alleged in Cynthia's petition fail to constitute acts of oppression as defined in La.R.S. 12:1-1435. SBI argued that La.R.S. 12:1-1435 does not operate retroactively such that any alleged acts of oppression occurring before January 1, 2015, the date the oppressed shareholder statute became effective, cannot provide a cause of action under the statute. Cynthia filed an opposition memorandum. A hearing on the

exception occurred on May 2, 2016, after which the trial court allowed the parties to file post-trial memoranda.  On June 30, 2016, the trial court issued an Order with reasons granting SBI's exception, finding that the oppressed shareholder statute constitutes substantive law which can only be applied prospectively.  The trial court further ordered Cynthia to file an amended petition, "alleging only those acts of shareholder oppression that have occurred on or after January 1, 2015[.]"

Cynthia filed a Motion to Certify Judgment as Final and Memorandum in Support, which was granted by the trial court on August 3, 2016.  She, thereafter, filed a devolutive appeal, which the trial court granted on August 17, 2016.  That record was lodged in this court under Docket Number 16-976.  The trial court, however, issued a subsequent Order on October 4, 2016, instructing Cynthia to show cause why the appeal "should not be dismissed as having been taken from a non-appealable, interlocutory judgment and/or a judgment lacking proper decretal language."  In response, Cynthia filed a brief with this court on October 18, 2016.  On November 16, 2016, this court, on its own motion, dismissed her appeal and held that the trial court's interlocutory ruling was "incapable of being designated as final pursuant to La.Code Civ.P. art. 1915(B)."  *Cole v. Sabine Bancshares, Inc.*, 16-796, p. 2 (La.App. 3 Cir. 11/16/16), 205 So.3d 995, 996.

On December 14, 2016, Cynthia filed with the trial court a Motion for Clarification of Judgment, Alternatively, Motion to Amend Judgment with a supporting memorandum.  On January 17, 2017, the trial court issued an Amended Judgment granting the peremptory exception in part, dismissing Cynthia's claims for actions prior to January 1, 2015, pursuant to the oppressed shareholder statute, ordering her to amend her petition to allege acts occurring on or after January 1, 2015, and certifying it as a final and appealable judgment.  Cynthia appeals that judgment.

2

On appeal, Cynthia asserts the following assignments of error:

[1.]    The trial court erred by finding that La.R.S. 12:1-1435, the oppressed shareholder statute, cannot apply to pre-2015 acts, thereby sustaining SBI's exception of no cause of action with respect to alleged acts of oppression which took place prior to 2015 and dismissing Ms. Cole's claims arising from same with prejudice.

[2.]    The trial court erred by ordering Ms. Cole to amend her petition to include only those alleged acts of oppression which took place after January 1, 2015, even though said acts should be admissible under Code of Evidence article 404(B) even if the oppressed shareholder statute does not specifically apply to them.

## STANDARD OF REVIEW

An appellate court's "standard or review for sustaining or denying a peremptory exception of no cause of action is de novo because it raises a question of law." *Hebert v. Shelton*, 08-1275, p. 3 (La.App. 3 Cir. 6/3/09), 11 So.3d 1197, 1201.

> The function of the peremptory exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition. The peremptory exception of no cause of action is designed to test the legal sufficiency of the petition by determining whether [the] plaintiff is afforded a remedy in law based on the facts alleged in the pleading. No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. The exception is triable on the face of the papers and for the purposes of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true.

*Id.* at 1202. "Simply stated, a petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief." *Fink v. Bryant*, 01-987, p. 4 (La. 11/28/01), 801 So.2d 346, 349.

3

## DISCUSSION

### I. <u>First Assignment of Error</u>

In her first assignment of error, Cynthia contends the trial court erred by finding that La.R.S. 12:1-1435, the oppressed shareholder statute, cannot apply to pre-2015 acts. The oppressed shareholder statute protects minority shareholders in closely held corporations from the improper exercise of majority control by compelling the corporation to purchase their shares. Douglas K. Moll, *Shareholder Oppression and the New Louisiana Business Corporation Act*, 60 Loy. L. Rev. 461 (2014). The pertinent part of La.R.S. 12:1-1435 provides:

> A. If a corporation engages in oppression of a shareholder, the shareholder may withdraw from the corporation and require the corporation to buy all of the shareholder's shares at their fair value.
>
> B. A corporation engages in oppression of a shareholder if the corporation's distribution, compensation, governance, and other practices, considered as a whole over an appropriate period of time, are plainly incompatible with a genuine effort on the part of the corporation to deal fairly and in good faith with the shareholder. Conduct that is consistent with the good faith performance of an agreement among all shareholders is presumed not to be oppressive. The following factors are relevant in assessing the fairness and good faith of the corporation's practices:
>
> > (1) The conduct of the shareholder alleging oppression.
> >
> > (2) The treatment that a reasonable shareholder would consider fair under the circumstances, considering the reasonable expectations of all shareholders in the corporation.

The lengthy statute further explains the term "fair value," the context of a transaction requiring appraisal, and the procedure that must be utilized when asserting a cause of action under the statute. La.R.S. 12:1-1435.

In this case, the trial court found that the oppressed shareholder statute cannot apply to pre-2015 acts because, in accordance with La.Civ.Code art. 6, it is a substantive law which operates prospectively. In explaining the substantive nature of the statute, the trial court noted in its written June 30, 2016 Order that

prior to the enactment of La.R.S. 12:1-1435, "the legislature had not provided a remedy for shareholder oppression." The trial court concluded that the statute constituted a substantive change "because it created a new right of action by a shareholder against a closely held corporation that engages in oppressive conduct not previously forbidden by statute."

On appeal, Cynthia contends that the oppressed shareholder statute is a procedural law which operates retroactively to acts of oppression which occurred prior to January 1, 2015. SBI opposes, arguing that the statute is a substantive law which operates prospectively to acts of oppression occurring after January 1, 2015. As such, we must determine whether the trial court correctly held that La.R.S. 12:1-1435 is a substantive law which operates prospectively rather than a procedural law which operates retroactively.

In Louisiana, "substantive laws create and/or change rights, duties, and rules, while procedural laws provide the avenue by which those rights, duties, and rules are enforced. Further, interpretative laws clarify the meaning of a statute." *Hixson Autoplex of Alexandria, Inc. v. Lewis*, 08-1142, p. 5 (La.App. 3 Cir. 4/1/09), 6 So.3d 423, 426, *writ denied*, 09-955 (La. 5/29/09), 9 So.3d 170. Louisiana Revised Statutes 1:2 provides: "No section of the Revised Statutes is retroactive unless it is expressly so stated." Louisiana Civil Code Article 6 "codifies the general rule against retroactive application of legislative enactments and the exceptions jurisprudentially engrafted onto it." *State Farm Mut. Auto. Ins. Co. v. Noyes*, 02-1876, p. 7 (La.App. 1 Cir. 2/23/04), 872 So.2d 1133, 1138. Louisiana Civil Code Article 6 provides: "In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." Louisiana Civil Code article 6 allows retroactive application of a

5

procedural or interpretative law without legislative consent while La.R.S. 1:2 does not. Louisiana Revised Statutes 1:2 has been limited to apply only to substantive rather than procedural or interpretive laws. *St. Paul Fire & Marine Ins. Co. v. E.R. Smith*, 609 So.2d 809, 816 (La.1992).

In order to determine whether La.R.S. 12:1-1435 can be applied retroactively, we must engage in a two-part test. *Manuel v. La. Sheriff's Risk Mgmt. Fund*, 95-406 (La. 11/27/95), 664 So.2d 81. "The first step involves determining whether the Legislature expressed an intent concerning the retroactive or prospective application of the law. If the Legislature did express such an intent, the process is at an end and the law must be characterized as the Legislature intended." *Id.* at 86. If the Legislature was silent with respect to intent, "we must discern the Legislature's intent and ourselves classify the law as either substantive, procedural or interpretive." *Id*.

The oppressed shareholder statute is part of the Louisiana Business Corporation Act (LBCA), La.R.S. 12:1-101 through 1-1705, which the Legislature adopted pursuant to 2014 La. Acts No. 328, § 1, and which became effective on January 1, 2015. The LBCA repealed and reenacted Chapter 1 of Title 12 to make the former Louisiana business law consistent with the American Bar Association Model Business Corporation Act (MBCA). La.R.S. 12:1-101; 2014 La. Acts No. 328, § 1. Neither the oppressed shareholder statute nor the LBCA have expressed an intent regarding the retroactive or prospective application of the law. Therefore, we must employ the second part of the two-part test and determine whether La.R.S. 12:1-1435 was intended to be substantive or procedural.

Based upon our interpretation of the definition of procedural laws, the oppressed shareholder statute is procedural if a remedy for shareholder oppression existed prior to the statute's enactment. In that regard, Cynthia has not cited

6

jurisprudence wherein a shareholder previously enjoyed the right to be paid the value of his or her shares upon proof of oppression, i.e., the right granted by La.R.S. 12:1-1435. Accordingly, that right did not exist prior to the LBCA's enactment because "the corporation had no obligation to buy back the minority investor's shares." Glenn G. Morris, *Model Business Corporation Act As Adopted In Louisiana*, 75 La. L. Rev. 983, 1059 (2015); La.R.S. 12:1-1435. Moreover, the term "oppression" is not defined in the MBCA, upon which the LBCA is based. *Id.* Comment (d) to the 2014 Revision of La.R.S. 12:1-1435 explains:

> The [MBCA] does not define the term "oppression." This Section [of the LBCA] defines the term in Subsection B [of the oppressed shareholder statute] in a way that combines the two leading tests of oppression used in the case law of other states, the "reasonable expectations" test and the "departure from standards of fair dealing" test. Those two tests have been incorporated into this Section to permit comparisons between cases arising under this Section and those in other jurisdictions in which oppressive behavior has been considered as grounds for relief in favor of a minority shareholder.

Louisiana's failure to previously recognize shareholder oppression was further noted in a law review article which was cited by the trial court in its reasons for judgment in this matter, as follows:

> Times, however, have changed. With the passage of the new Louisiana Business Corporation Act (LBCA), Louisiana becomes the fortieth state in the country to provide statutory relief for oppressive conduct. Effective January 1, 2015, minority shareholders in Louisiana closely held corporations who are unjustifiably denied their participatory and financial rights can seek an escape from their "trapped" status by compelling the corporation to purchase their shares.

Douglas K. Moll, 60 Loy. L. Rev. at 462-63 (footnotes omitted).

Similarly, in *Krebs, Lasalle, Lemieux Consultants, Inc. v. G.E.C., Inc.*, 16-24 (La.App. 5 Cir. 7/27/16), 197 So.3d 829, (*Krebs I*), the fifth circuit affirmed the trial court's grant of G.E.C., Inc.'s exception of no right of action based upon

application of a section of the present-day LBCA regarding the effect of corporate dissolution. La.R.S. 12:1-1405. The fifth circuit explained:

> KLL, Inc. contends that La.R.S. 12:1-1405 should apply to its corporation that was dissolved by affidavit in 2012. [Louisiana Revised Statutes] 12:1-1405 became effective January 1, 2015, more than two years *after* KLL, Inc. was dissolved by affidavit under La.R.S. 12:142.1 and *after* KLL, Inc. filed its original petition to enforce the promissory note. [Louisiana Revised Statutes] 12:1-1405 changed the fundamental rights of the parties concerning the dissolution of corporations. Therefore, the present statute qualifies as a substantive enactment and is applied prospectively under La.[Civ.Code] art. 6 and La.R.S. 1:2. Accordingly, La.R.S. 12:1-1405 is not applicable to the present case[,] and we must determine whether KLL, Inc. has a right of action against G.E.C., Inc. on the promissory note under La.R.S. 12:142.1, which was effective at the time KLL, Inc. dissolved its corporation by affidavit.

*Id*. at 832 (footnote omitted).

After *Krebs I* was decided, KLL, Inc. sought review of the trial court's order denying its petition for reinstatement of corporate status. In *In Re: Krebs Lasalle Lemieux Consultants, Inc.*, 16-586, p. 3 (La.App. 5 Cir. 3/15/17), 215 So.3d 939, 941, (*Krebs II*), the fifth circuit vacated and remanded the matter, explaining:

> Recognizing that the district court did not have the benefit of *Krebs I* when it issued its order denying KLLC's petition for reinstatement, we find that *Krebs I* instructs our decision in this matter. Having previously determined in *Krebs I* that the newly enacted provisions of the Business Corporation Act do not apply when determining the effects of KLLC's pre-enactment dissolution, we find that these newly enacted provisions also do not apply to limit KLLC's capacity to seek reinstatement, which is governed by La.R.S. 12:142.1, the law in effect at the time the corporation was dissolved by affidavit. Therefore, we find that KLLC has a right to pursue reinstatement. In this regard, KLLC has the burden of producing sufficient evidence that there is a valid and lawful purpose for reinstating KLLC.

Although *Krebs I* and *Krebs II* concern application of the effect of corporate dissolution under La.R.S. 12:1-1405 whereas the instant matter concerns application of the oppressed shareholder statute pursuant to La.R.S. 12:1-1435, both statutes are part of the LBCA, La.R.S. 12:1-101 through 1-1705. As such, "the newly enacted provisions of the [LBCA] do not apply when determining the

8

effects of" SBI's alleged oppressive conduct prior to the enactment of the LBCA. *In Re: Krebs Lasalle Lemieux Consultants, Inc.*, 215 So.3d at 941.

Accordingly, we find that La.R.S. 12:1-1435 is a substantive law because it gives an oppressed shareholder the right to compel a corporation to buy back the minority investor's shares. Because that right was not recognized prior to the LBCA's enactment, we hold that it is not a procedural law.

Cynthia's first assignment of error is without merit.

## II. Second Assignment of Error

In her second assignment of error, Cynthia contends that the trial court erred by ordering her to amend her petition to include only those alleged acts of oppression which took place after January 1, 2015. She opines that if the oppressed shareholder statute does not apply retroactively, pre-2015 facts can still be considered under the statute based upon its requirement that acts be considered "over an appropriate period of time." La.R.S. 12:1-1435(B). Cynthia relies upon the supreme court's holding in *Walls v. American Optical Corporation*, 98-455, p. 4 (La. 9/8/99), 740 So.2d 1262, 1266 (citing 1 M. Planiol, *Treatise on the Civil Law*, § 243 (La.St.L.Inst.Trans.1959)), that: "[A] law may permissibly change the future consequences of an act and even the consequences of acts committed prior to the law's enactment without operating retroactively." We disagree with Cynthia's contention for the following reasons.

In *Walls*, the supreme court recognized the difficulty in determining whether a statute operates retroactively when it "must be applied to a case in which some operative facts pre-date the law while others occurred after the law's effective date." *Walls*, 740 So.2d at 1266. The issue was whether a 1976 amendment to La.R.S. 23:1032, which granted immunity to the employer's executive officers under workers' compensation law, barred a wrongful death action against the

9

executive officers when the decedent's occupational exposures occurred before the statute was amended, although his death from silicosis occurred after the amendment's effective date. The supreme court had to determine whether the statutory amendment, as applied to the facts of the case, operates retroactively. It relied on a formula set out by Planiol for identifying the only two situations when a law applies retroactively as: "[A] law is retroactive when it goes back to the past either to *evaluate the conditions of the legality of an act*, or to modify or suppress the *effects of a right already acquired*. Outside of those conditions, there is no retroactivity." *Id*. at 1267 (quoting 1 M. Planiol, *Treatise on the Civil Law*, § 243 (La.St. L. Inst.Trans.1959)) (emphasis in original).

The supreme court in *Walls* held that application of the 1976 amendment to La.R.S. 23:1032 did not "constitute retroactive operation" in that case. *Id*. at 1270. It reasoned that the immunity provision in La.R.S. 23:1032 was not a law governing conduct and, as such, "does not evaluate the conditions of liability or attach new legal consequences to past acts." *Walls*, 740 So.2d at 1268. It also found that the amendment "does not go back to the past" to "modify or suppress the effects of a right already acquired." *Id*. at 1270. The supreme court explained that a wrongful death cause of action did not arise, and, thus, the plaintiffs could not have acquired a "right" in their cause of action for wrongful death until the date of the death, which occurred after the effective date of the statute. *Id*.

The supreme court further explained:

> [W]hat we adopt herein today is a case by case approach to determining, in cases involving facts that span enough legislative sessions to allow for the intervention of new law, whether any intervening statute, if applied to that case, would operate retroactively. **If the statute would operate retroactively under Planiol's definition, then, the two-fold analysis from La. C.C. art. 6, with which all courts are familiar, must be made.** Making the determination of when the cause of action arose for the various causes of action which might be asserted merely provides the temporal

10

guidepost from which a court may determine whether the intervening statute operates retroactively or prospectively and the consequences that flow from that determination will differ with each case.

*Id.* at 1271, fn. 8 (emphasis added).

In this case and as detailed above, we performed the two-fold analysis from La.Civ.Code art. 6, and we have determined that the oppressed shareholder statute is a substantive law which should be applied prospectively. We, therefore, must utilize Planiol's formula to determine if retroactive application is at issue by ascertaining whether La.R.S. 12:1-1435 "(1) evaluates the conditions of the legality of a past act, or (2) modifies or suppresses the effects of a right already acquired." *Walls*, 740 So.2d at 1267. If neither of these two consequences results from application of the statute, "then it operates prospectively only[.]" *Id.*

With respect to the second situation regarding modification of an already acquired right, *Walls* explains: "If a party acquires a right to assert a cause of action prior to a change in the law, that right is a vested property right" and is "protected by the due process guarantees." *Walls*, 740 So.2d at 1268. "If retroactive application of the law would divest that party of such a vested right, then retroactive application could be constitutionally impermissible." *Id.* In this case, Cynthia could not have acquired a right in a cause of action for oppression prior to the statute's effective date since an oppression remedy failed to exist. Thus, the second situation is inapplicable.

With respect to the first situation regarding the evaluation of the conditions of the legality of a past act, we note: "Under Planiol's first situation in which a law operates retroactively, when a[n] intervening new law creates a cause of action, and thus attaches new consequences to past events, the retroactivity event is the conduct or activity regulated." *Anderson v. Avondale Indus., Inc.*, 00-2799, p. 7 (La. 10/16/01), 798 So.2d 93, 99. In this case, shareholders, such as Cynthia, had

11

no cause of action for acts of oppression prior to January 1, 2015. Thus, the oppressed shareholder statute creates a new cause of action against corporations, such as SBI. Application of the statute to SBI's activities which occurred prior to January 1, 2015, is impermissible under the laws of retroactivity. Consideration of SBI's acts prior to January 1, 2015, would attach new legal consequences to SBI's conduct prior to enactment of the statute. This would operate as an impermissible retroactive application of the statute. We, therefore, find that Cynthia's argument fails in this regard.

Cynthia further contends that motive and intent are relevant factors to be considered when determining whether a shareholder has been oppressed based upon the statute's requirement that a corporation must "deal fairly and in good faith with the shareholder." La.R.S.12:1-1435(B). Notwithstanding the prohibition against retroactive application of substantive laws, she contends that pre-January 1, 2015 facts relating to oppression, such as motive and intent, can be considered in light of La.Code Evid. art. 404(B) (emphasis added), which provides:

> Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of **motive**, opportunity, **intent**, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

In support of this argument, Cynthia cites *Monroe Medical Clinic, Inc. v. Hospital Corporation of America*, 622 So.2d 760 (La.App. 2 Cir.), *writ denied*, 629 So.2d 1135 (La. 1993), wherein a physician sued a former hospital administrator and the two corporations that controlled the hospital under the unfair trade practices law. The physician plaintiff filed suit on March 5, 1987, and he

12

subsequently resigned as a hospital medical staff member on January 1, 1989. The trial court acknowledged the one-year period for bringing an action for unfair trade practices was peremptive and not subject to prescription. It also addressed the admissibility of events occurring before March 5, 1986, i.e., the beginning of the one-year peremptive period, and after the physician's January 1, 1989 resignation. The trial court held that such events were perempted although they could be introduced into evidence to show motive, intent, or plan under La.Code Evid. art. 404(B)(1). The second circuit affirmed the trial court's holding.

We find that Cynthia's reliance on the second circuit's holding in *Monroe Medical Clinic* is misplaced because it concerns evidence of acts which were barred by peremption; whereas, the instant matter concerns evidence of acts which are barred by retroactivity. Therefore, we find the trial court in this case correctly ordered Cynthia to amend her petition to include only those alleged acts of oppression which took place after January 1, 2015, the effective date of the statute. Cynthia's second assignment or error is without merit.

## CONCLUSION

The trial court's judgment granting a Peremptory Exception of No Cause of Action in favor of Defendant/Appellee, Sabine Bancshares, Inc., is affirmed. All costs associated with this appeal are assessed to Plaintiff/Appellant, Cynthia Anne Cole.

**AFFIRMED.**